STATE OF NORTH CAROLINA v. DAVID HENRY ROGERS

No. COA11-482

(Filed 6 March 2012)

## 1. Constitutional Law—right to counsel—removal of attorney of choice—potential conflict of interest

The presumption in favor of defendant's counsel of choice was properly overcome in a prosecution for attempted first-degree murder and assault and the trial court did not abuse its discretion by removing defendant's retained counsel based on the possibility that the attorney might be called to testify. The attempted murder arose from defendant's affair with the victim's wife, and his retained counsel was also his best friend and had talked with the victim's wife. There was evidence of a serious potential for conflict in the attorney's relationships with both parties and his awareness of personal and sensitive information. The fact that the conflict never materialized was not dispositive.

## 2. Constitutional Law—right to counsel—removal of counsel—potential conflict of interest—findings

The trial court did not apply an incorrect standard to its decision on the State's motion to remove defendant's counsel under Rule 3.7 of the North Carolina Revised Rules of Professional Conduct. Defendant argued that the trial court should have made findings that it was likely that the attorney would be a necessary witness but cited no legal authority for its position, and there was no evidence of substantial hardship. There was competent evidence in the record to support the trial court's conclusions.

**3. Attorneys—removal—conflict of interest—pretrial and trial**

    The trial court did not err in an attempted first-degree murder and assault prosecution by determining that defendant's retained attorney must be removed to avoid any conflict of interest for pretrial as well as trial proceedings.

**4. Criminal Law—defenses—automatism—instruction**

    There was no plain error in a prosecution for attempted murder and assault where the court instructed the jury that defendant had the burden of proving the defense of automatism.

**5. Constitutional Law—double jeopardy—attempted murder— assault—same facts**

    There was no double jeopardy violation where judgment was entered for both attempted murder and assault with a deadly weapon with intent to kill inflicting serious bodily injury based upon the same evidence. Each offense contained at least one element not included in the other.

Appeal by defendant from judgment entered 8 October 2010 by Judge William R. Pittman in Orange County Superior Court. Heard in the Court of Appeals 26 October 2011.

*Attorney General Roy Cooper, by Special Deputy Attorney General R. Marcus Lodge, for the State.*

*Appellate Defender Staples Hughes, by Assistant Appellate Defender Benjamin Dowling-Sendor, for defendant-appellant.*

BRYANT, Judge.

Where the record contains evidence of a serious potential conflict of interest, the trial court did not violate defendant's Sixth Amendment right to counsel by removing defendant's counsel. Where defendant relies on the affirmative defense of automatism, the trial court did not commit plain error by instructing the jury that defendant had the burden of persuasion to prove the defense of automatism. Where each offense of which defendant was convicted required proof of at least one element the other did not, there was no violation of the prohibition against double jeopardy.

On 9 July 2008, William Ralston ("Ralston"), retired firefighter and Coast Guard reservist, was taking care of personal matters in Orange County. On his way to an oil change, he passed his home on

STATE v. ROGERS

[219 N.C. App. 296 (2012)]

Wheeler's Church Road and saw an unfamiliar vehicle parked in his driveway with an unknown man standing beside it. Ralston subsequently identified that man as defendant.

Ralston entered his driveway and asked defendant if he needed any help. After confirming Ralston's identity, defendant said that he had some papers Ralston needed to sign relating to Ralston's recent retirement from the Coast Guard. Ralston walked toward defendant to comply with his request, at which time defendant produced a revolver and shot Ralston in the abdomen. Badly injured, Ralston ran to hide in some nearby brush and woods, where he called 911 and his wife's office seeking assistance. An ambulance responded, and Ralston was transported first to Person Memorial Hospital, then by helicopter to Duke University Medical Center, where he underwent surgery and was hospitalized for nearly one week. Ralston's neighbor, Bryan Murray, was home at the time of the shooting and testified at trial that he heard two gunshots and Ralston's screams at the time of the shooting.

Ralston did not know defendant. However, defendant knew Ralston by virtue of defendant's ongoing relationship with Ralston's wife, Chardell Ralston ("Chardell"). Defendant had been having an affair with Chardell for approximately two years prior to the shooting. On a few occasions during the course of their relationship, Chardell discussed with defendant the possibility of leaving her husband. Chardell also communicated with defendant's best friend and attorney, Wayne Eads ("Eads"), about her relationship with defendant and the consequences of a divorce.

When questioned by police on 11 July 2008, defendant denied any involvement in the shooting. He admitted knowing Chardell platonically, but denied that they had any sexual relationship. To Chardell, defendant also denied involvement in the shooting during a conversation they had on 10 July 2008. Approximately four months after the shooting, defendant told Chardell that he had no memory about the events of which he was accused.

Defendant was indicted by an Orange County grand jury on one count of attempted first-degree murder and one count of assault with a deadly weapon with intent to kill inflicting serious injury. Defendant hired his friend Eads to represent him.

On 22 September 2009, a pretrial hearing was held on the State's motion *in limine* to remove Eads as defendant's counsel. The motion was based on potential conflicts of interest that could arise if Eads

was called to testify in defendant's trial. The trial court granted the State's motion and appointed the Public Defender of Judicial District Fifteen-B to represent defendant. Defendant subsequently declined to be represented by the Public Defender, choosing instead to represent himself *pro se.*

Defendant entered a pretrial notice of appeal regarding the court's ruling on Eads' disqualification. On 13 January 2010, this Court entered an order granting the State's motion to dismiss defendant's pretrial appeal as did the Supreme Court of North Carolina six months later.

Defendant's case came on for trial at the 4 October 2010 criminal session of Orange County Superior Court. On 8 October 2010, the jury returned verdicts finding defendant guilty of one count of attempted first-degree murder and one count of assault with a deadly weapon with intent to kill inflicting serious bodily injury. On 8 October 2010, the trial court consolidated the charges and sentenced defendant to imprisonment for 132 to 168 months. Defendant appeals.

---

On appeal, defendant raises the following questions: (I) whether the trial court committed structural error by removing defendant's retained counsel; (II) whether the trial court committed plain error by instructing the jury that defendant had the burden of persuasion to prove the defense of automatism; and (III) whether the trial court violated the prohibition against double jeopardy.

*I*

[1] Defendant first argues that the trial court erred by removing Eads as defendant's retained counsel based on the possibility that Eads may have been called to testify as a witness in defendant's trial. Specifically, defendant contends that Eads' disqualification was erroneous because the trial court applied an incorrect legal standard and also because the trial court made no findings of fact to show that Eads was a likely and necessary witness for defendant's trial. We disagree.

On a motion for disqualification, the findings of the trial court are binding on appeal if supported by any competent evidence, and the court's ruling may be disturbed only where there is a manifest abuse of discretion, or if the ruling is based on an error of law. *State v. Taylor,* 155 N.C. App. 251, 255, 574 S.E.2d 58, 62 (2002) (citation omitted).

An accused's right to counsel in a criminal prosecution is guaranteed by both the North Carolina Constitution and the Sixth

STATE v. ROGERS

[219 N.C. App. 296 (2012)]

Amendment to the United States Constitution. *Id.* at 254, 574 S.E.2d at 62 (citation omitted). An essential element of this right is the right to retain counsel of the accused's choice. *Id.* (citation omitted). However, this right is not absolute. *Id.* (citation omitted).

> [C]ourts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them. *Therefore, where it is shown that an actual conflict or the potential for conflict exists, the presumption in favor of an accused's counsel of choice will be overcome. . . .* [I]t is incumbent upon a court faced with either an actual or potential conflict of interest, regarding attorney representation, to conduct an appropriate inquiry and, if need be, grant the motion for disqualification. *The trial court must be given substantial latitude in granting or denying a motion for attorney disqualification.*

*State v. Shores,* 102 N.C. App. 473, 475, 402 S.E.2d 162, 163 (1991) (citing *Wheat v. United States,* 486 U.S. 153, 159-60 (1988)) (emphasis added).

The United States Supreme Court has discussed the parameters of the Sixth Amendment right to counsel of choice in a number of cases. In *United States v. Gonzalez-Lopez,* 548 U.S. 140, 142-43, 165 L. Ed. 2d 409, 410 (2006), the trial court denied *pro hàc vice* admission of the defendant's retained counsel based on the counsel's previous violation of a rule of professional conduct while handling an unrelated matter. When the case reached the Supreme Court, the Government conceded that the district court's disqualification of defendant's retained counsel was erroneous but argued that it was harmless error. *Id.* at 144, 165 L. Ed. 2d at 417. The Supreme Court concluded that a denial of the right to counsel of choice is not subject to review for harmlessness but rather qualifies as "structural error" affecting the framework within which the trial proceeds. *Id.* at 148-49, 165 L. Ed. 2d at 419. In holding that the district court's error violated the defendant's constitutional right to counsel of choice, the Supreme Court took care to note that none of the traditional limitations on the right to choose one's counsel was relevant, such as "a court's power to enforce rules or adhere to practices that determine which attorneys may appear before it, or to make scheduling and other decisions that effectively exclude a defendant's first choice of counsel." *Id.* at 151-52, 165 L. Ed. 2d at 421-22. The Court then stated that its opinion should not cast doubt or place qualification upon previous holdings

limiting the right to counsel of choice and recognizing the authority of trial courts to establish criteria for admitting lawyers to argue before them. *Id.*

In *Wheat v. United States*, 486 U.S. 153, 156, 100 L. E. 2d 140, 147 (1988), the petitioner moved to substitute as his counsel the counsel for several other codefendants in the same case, asserting his Sixth Amendment right to counsel of choice and his willingness to waive the right to conflict-free counsel in support of his motion. The district court denied the motion based on the substantial likelihood that the defendants would be called to testify at each others' trials, which would create a serious and untenable conflict of interest for the counsel. *Id.* at 156-57, 100 L. E. 2d at 147. In upholding the district court's ruling, the Supreme Court emphasized the latitude that must be accorded a trial court in making such a determination:

> [A] district court must pass on the issue of whether or not to allow a waiver of a conflict of interest by a criminal defendant not within the wisdom of hindsight after the trial has taken place, but in the murkier pre-trial context when relationships between parties are seen through a glass, darkly. The likelihood and dimensions of nascent conflicts of interest are notoriously hard to predict[.] . . . *For these reasons we think the district court must be allowed substantial latitude in refusing waivers of conflicts of interest* not only in those rare cases where an actual conflict may be demonstrated before trial, *but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses.*

*Id.* at 162-63, 100 L. E. 2d at 151 (emphasis added).

In *State v. Taylor*, 155 N.C. App. 251, 253, 574 S.E.2d 58, 60 (2002), this Court addressed the issue of whether disqualification of counsel was proper where counsel sought to represent a defendant accused of shooting his live-in girlfriend after having previously represented the victim in divorce proceedings. After the shooting, defendant's counsel also prepared a document giving the victim's power of attorney to the defendant and had it sent to her to be executed. *Id.* at 256-57, 574 S.E.2d at 63. In determining that disqualification was proper, this Court noted that the failure of several potential conflicts to materialize in defendant's trial was not dispositive, referencing the Supreme Court's considerations in *Wheat*. *Id.* at 261-62, 574 S.E.2d at 65-66. Since a trial court must make a determination on a defendant's

right to be represented by retained counsel at a very early stage in the proceedings, it must be given wide discretion in refusing waivers of conflicts of interest, even when no actual conflict may be shown prior to trial but a potential conflict exists. *Id.* While this Court did express concern over the State's nearly two-year delay in bringing the motion for disqualification, it found no prejudice since the substitute attorney was given five months to prepare for trial. *Id.* at 265, 574 S.E.2d at 67-68.

*A*

On appeal, defendant cites the United States Supreme Court's holding in *Gonzalez-Lopez* and this Court's holding in *Shores* to support his contention that disqualification of Eads was erroneous. However, there are substantial differences between the circumstances presented in the instant case and those presented in the aforementioned cases such that the outcomes should not be the same.

In *United States v. Gonzalez-Lopez*, the government conceded that disqualification of the defendant's counsel was erroneous in the first instance, and therefore the Supreme Court analyzed that case within the framework of structural error. 548 U.S. at 144, 165 L. Ed. 2d at 417. Here, the State has made no such concession nor is there an indication that we should review for structural error. Further, in *Gonzalez-Lopez*, the Court took care to note that none of the traditional limitations on the right to choose one's counsel was relevant, thus implying that a different result would have been reached if such limitations were present. *Id.* at 151-52, 165 L. Ed. 2d at 421-22. Here, one such limitation, a potential conflict of interest for defendant's retained counsel, was present from the outset.

Defendant also contends that the facts of this case merit the same outcome as in *State v. Shores*. In *State v. Shores*, we held that the "defendant's Sixth Amendment right . . . is too important to be denied on the basis of a mere, though substantial, possibility that [defense co-counsel] Chandler might be called as a witness [for the State]." 102 N.C. App. at 475-76, 402 S.E.2d at 164 (citation and internal quotations omitted). The Court, subsequently, concluded that defense counsel Chandler should not have been disqualified from representing defendant during pre-trial proceedings. *Id.* at 474, 402 S.E.2d at 163. In reaching their conclusion, the Court stated that:

> [W]e have considered the fact that if [defense co-counsel] Chandler were disqualified this early in the proceedings and a

> pre-trial hearing determines that either [State's witness] Amanda Durham can not testify on behalf of the State or that the attorney-client privilege prohibits Chandler from testifying, defendant will have lost his constitutional right for no good reason.

*Id.* at 476, 402 S.E.2d at 164.

However, the facts in *Shores* are different from the facts in the case at bar. Most notably in *Shores*, according to the expected testimony of the State's witness, the defendant and defense counsel Chandler *may* have spoken previously about the crime for which defendant was being tried thereby resulting in a conflict of interest if Chandler was called as a witness for the State. *Id.* at 474, 402 S.E.2d at 162-63 (emphasis added). Conversely, in the case *sub judice*, it is uncontested that Eads and defendant had an attorney-client relationship. However, no such attorney-client relationship existed between Eads and Chardell. Therefore, because Eads had personal knowledge of the relationship between Chardell and defendant, a potential, or even actual, conflict of interest regarding attorney representation was far more probable in this case than in *Shores* if Eads was called to testify as a State's witness. Therefore, *Shores* does not control the result in this case.

Instead, we find the instant case substantially similar to *Taylor*, wherein this Court affirmed disqualification of the defendant's counsel based on, *inter alia*, the possibility that counsel would be called to testify as a witness at defendant's trial. 155 N.C. App. at 260-61, 574 S.E.2d at 65. Here, as in *Taylor*, the State based its concerns on the preexisting relationships between the attorney and the parties and witnesses to the proceeding, and the State described with specificity the matters about which the attorney could possibly testify. Moreover, in both cases, the State was delayed in bringing its motion for disqualification, and the conflicts failed to materialize at trial.

In light of the relevant precedent, the trial court was justified in its action with respect to attorney Eads. The record indicates that there was evidence of a serious potential for conflict based on Eads' longstanding relationship with the defendant as well as his correspondence with Chardell prior to the shooting. By virtue of his relationships with both parties, Eads was aware of personal and sensitive information, including the nature of their affair, which was a major factor leading to the shooting. Had Eads remained as defendant's counsel, he might have been called to testify, at which time he might

have been asked to disclose confidential information regarding the relationship between defendant and Chardell, which information may have divulged defendant's motive for shooting Ralston, which in turn could compromise his duty of loyalty to his client.

As in *Taylor*, the fact that the conflict never materialized is not dispositive, nor is the fact that the State waited over one year after defendant's arrest and indictment to bring its motion for disqualification, since defendant still had nearly a year to prepare for trial after Eads was removed as counsel.

Based on the serious potential for conflict, the presumption in favor of defendant's counsel of choice was properly overcome, and the trial court did not abuse its discretion in disqualifying Eads as defendant's counsel.

*B*

**[2]** Defendant also alleges that the trial court applied an incorrect legal standard in disqualifying Eads. Defendant correctly states that the ethical rule at issue in the present case is Rule 3.7 of the North Carolina Revised Rules of Professional Conduct, which states, in pertinent part:

> (a)  A lawyer shall not act as advocate in a trial in which the lawyer is likely to be a necessary witness unless:
>
> (1)  the testimony relates to an uncontested issue;
>
> (2)  the testimony relates to the nature and value of legal services rendered in the case; or
>
> (3)  disqualification of the lawyer would work substantial hardship on the client.

N.C. Rules of Prof'l Conduct Rule 3.7(a) (2011). In a recent ethics opinion, the North Carolina State Bar opined that testimony is "necessary" within the meaning of the rule when it is relevant, material, and unobtainable by other means. 2011 Formal Ethics Opinion 1.

Pursuant to the language of Rule 3.7, defendant argues that the trial court should have made explicit and detailed findings that it was "likely" that Eads would be a "necessary" witness in defendant's trial and considered the various exceptions to the Rule before disqualify-

ing him as defendant's retained counsel. However, defendant cites no legal authority to support his position.[1]

In its motion *in limine*, the State specifically set forth several factual issues upon which attorney Eads could testify, including his conversations with Chardell prior to the shooting, defendant's love for Chardell, Chardell's marital issues which led to defendant shooting Ralston, and defendant's demeanor around the time of the offense. With respect to at least some of these issues, Eads would have been uniquely aware of the circumstances such that his testimony would have been unobtainable by other means, considering his private correspondence with Chardell and his long-standing relationship with defendant, which would enable him to form unique opinions as to certain aspects of their characters and their relationship with one another.

In response to the State's motion, the trial court stated:

> [It] does have a significant concern about the potential that your attorney could be called as a witness in this case. This is not a comment on the validity or the truthfulness of the kinds of statements or facts that the State puts forth in the motion. But the mere fact that he may be called to testify to say things that you think would support these statements not being true or saying things that might support the facts alleged in the motion in limine, either way, he could not function as both a witness and an attorney. And so that conflict of interest may also present ethical issues for Mr. Eads, your attorney, that would be difficult if not impossible to navigate in a trial.

> I have—the Court has considered the possibility that there may be conflicts that you could waive and has considered alternatives to relieving your attorney of his representation of you. But in the interest of fairness and efficiency and to avoid any conflict of interest or potential ethical issues in the trial or further proceedings of these matters, I will relieve Mr. Eads as the attorney of record in your case.

---

1. In *Robinson & Lawing v. Sams*, 161 N.C. App. 338, 587 S.E.2d 923 (2003), this Court held that the trial court's order disqualifying the defendant's attorney should not be vacated for want of findings of fact absent a request for such findings from either party. *Id.* at 341, 587 S.E.2d at 925-26. Further, orders granting disqualification have been upheld even absent explicit findings that an attorney was "likely" to be a "necessary" witness. *Taylor*, 155 N.C. App. at 264, 574 S.E.2d at 64 ("[A]lthough [counsel] was not actually called as a witness to testify . . . the *possibility* certainly existed." (emphasis added)).

We note that neither party requested, nor did the trial court produce, findings of fact supporting its ruling on the motion *in limine*. However, we further note that there is competent evidence in the record to support the trial court's conclusion that Eads was likely to be a necessary witness at defendant's trial and that none of the exceptions to Rule 3.7 apply.

Arguably, the only applicable exception to Rule 3.7 is subdivision (c), involving substantial hardship. However, there is no evidence that defendant suffered such hardship because: defendant was appointed new counsel, which he subsequently declined; Eads was disqualified over a year before the trial was to take place; and, the issues being adjudicated were not so complicated as to require someone with a unique accumulation of knowledge to handle them.

Accordingly, the trial court did not apply an incorrect legal standard in rendering its decision on the State's motion. Defendant's argument is overruled.

## C

**[3]** Defendant's final contention is that the trial court erred by removing Eads as defendant's counsel for pretrial as well as trial proceedings. We disagree.

"The right of a defendant to have an attorney of his own choosing must be balanced against the court's interest of conducting a fair and unbiased legal proceeding." *See Taylor*, 155 N.C. App. at 255, 574 S.E.2d at 62. Further, the trial court has tremendous latitude in determining whether or not a lawyer must be removed based on an actual or potential conflict. *See Wheat*, 486 U.S. at 162-63, 100 L. E. 2d at 151 ("[T]he district court must be allowed substantial latitude in refusing waivers of conflicts of interest not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses.").

As a result, we find that the trial court did not err in determining that attorney Eads must be removed as defense counsel "in the interest of fairness and efficiency and to avoid any conflict of interest or potential ethical issues in the trial or further proceedings of these matters." This argument is overruled.

## II

**[4]** Defendant next argues that the trial court committed plain error by instructing the jury that defendant had the burden of persuasion to prove the defense of automatism. We disagree.

Since defendant did not object or request an alternate jury instruction at trial, the standard of review for this claim is plain error. *State v. Collins*, 334 N.C. 54, 62, 431 S.E.2d 188, 193 (1993).

In North Carolina, automatism or unconsciousness is a complete defense to a criminal charge because it precludes both a specific mental state and a voluntary act. *State v. Jones*, 137 N.C. App. 221, 230, 527 S.E.2d 700, 706 (2000). Automatism is an affirmative defense, and the burden is on the defendant to prove its existence to the jury. *Id.* In *State v. Jones*, this Court overruled the defendant's argument that the jury instruction on automatism constituted plain error because it shifted the burden of proving voluntariness away from the State and instead made the defendant disprove that he acted voluntarily. *Id.*

Defendant contends that since the State must prove every element of an offense beyond a reasonable doubt, and since automatism is a defense that raises a reasonable doubt about the element of a voluntary act, the State should have the burden of proof with respect to the defense. However, defendant's argument is nearly identical to the argument expressly overruled by this Court in *Jones*. Accordingly, we hold that the trial court did not commit plain error in rendering its jury instruction regarding the defense of automatism.

## III

**[5]** Defendant's final argument is that the trial court violated the prohibition against double jeopardy. We disagree.

This Court reviews a trial court's denial of a double jeopardy motion to arrest judgment on an offense *de novo*. *State v. Newman*, 186 N.C. App. 382, 386-87, 651 S.E.2d 584, 587 (2007).

In *State v. Tirado*, 358 N.C. 551, 579, 599 S.E.2d 515, 534 (2004), the North Carolina Supreme Court held that because the offenses of attempted first-degree murder and assault with a deadly weapon with intent to kill inflicting serious bodily injury each contain at least one element not included in the other, the defendants were not subjected to double jeopardy when both charges were submitted to the jury, even though the two offenses arose out of the same factual basis.

Additional cases have resulted in similar outcomes. *See, e.g., State v. Garris*, 191 N.C. App. 276, 287, 663 S.E.2d 340, 349 (2008); *State v. Peoples*, 141 N.C. App. 115, 119-20, 539 S.E.2d 25, 29 (2000).

Defendant alleges that by entering judgments against defendant for both attempted murder and assault with a deadly weapon with intent to kill inflicting serious bodily injury, the trial court violated the prohibition against double jeopardy because both offenses were based on identical evidence. However, the aforementioned case law makes clear that conviction for two separate offenses arising out of one incident is not a violation of the prohibition against double jeopardy when each offense requires proof of at least one element that the other does not. *Peoples*, 141 N.C. App. at 119, 539 S.E.2d at 29.

Thus, the trial court did not violate the prohibition against double jeopardy by entering judgments against defendant on two offenses arising out of the same incident, and defendant's argument is overruled.

No error.

Judges ELMORE and STEPHENS concur.