STATE OF NORTH CAROLINA
v.
PHILIP WARNEW SMITH

No. COA13-463

Filed 5 November 2013

**1. Constitutional Law—effective assistance of counsel—failure to show prejudice**

Defendant did not receive ineffective assistance of counsel and could not show prejudice when there was no reasonable probability that, in the absence of the counsel's alleged errors, the result of the proceeding would have been different. Further, the obstruction of justice and attempted obstruction of justice charges were dismissed at the close of the State's evidence and defendant was acquitted of all but one of the sexual misconduct charges.

**2. Sexual Offenders—registration during appeals process—public safety outweighs stigma**

The trial court did not err by requiring defendant to register as a sex offender even though defendant contended that his conviction was not yet "final" insofar as his right to direct appeal under N.C. R. App. P. 4(a)(2) had not yet expired. Protecting public safety and facilitating law enforcement by requiring registration during the appeals process outweighs the stigma the accused may suffer from his registration during the appeals process.

Appeal by Defendant from judgment entered 18 October 2012 by Judge Zoro J. Guice, Jr., in Swain County Superior Court. Heard in the Court of Appeals 25 September 2013.

*Attorney General Roy Cooper, by Assistant Attorney General Creecy Johnson, for the State.*

*John T. Barrett for Defendant.*

STEPHENS, Judge.

*Evidence and Procedural History*

Defendant Phillip Warren Smith was tried on two sets of charges: (1) attempted second-degree rape, second-degree sexual offense, and sexual battery for events occurring on 9 May 2011 and (2) obstruction of justice and attempted obstruction of justice for events occurring on 1 September 2011. The evidence at Defendant's trial tended to show the following: Defendant was manager of a trailer park on Stillhouse Branch Road in Swain County. On 9 May 2011, Easter Octavia Ramsey met Defendant outside her father's trailer in the park. Ramsey asked Defendant to replace her father's carpet. Ramsey assisted Defendant in measuring the unit's living room and hallway while her father watched cartoons in the living room. They then entered the bathroom together. Ramsey testified that inside the bathroom, Defendant shoved Ramsey against the counter and started kissing her. She further testified that Defendant pressed himself against her and proceeded to pull her breasts out of her shirt. Defendant then forced his hand up Ramsey's shorts and stuck his fingers inside her vagina. Defendant exposed his penis and forced Ramsey to touch it. After Ramsey warned Defendant that she thought her father was coming down the hallway, Defendant allowed her to leave the bathroom.

Ramsey reported the incident to the Swain County Sheriff's Office immediately. After reviewing Ramsey's interview, Detective Sarah Miller Hofecker sought and secured a warrant for Defendant's arrest on charges of attempted second-degree rape, second-degree sexual assault, and sexual battery.

Several months following his arrest, Defendant was also charged with one count each of obstruction of justice and attempted obstruction of justice. These charges stemmed from allegations made by Ramsey's mother, Dot Shuler, who testified that Defendant repeatedly asked Shuler to make her daughter drop the charges. Ramsey and Schuler reported Defendant's statements to the Swain County Sheriff's Department. The Sheriff's Department attempted to set up a recorded conversation between Ramsey or Schuler and Defendant; however, requests for adequate recording equipment took approximately a month to process.

Due to the slow pace of the official investigation, Ramsey and Shuler decided to try to take action on their own. Ramsey and Shuler visited

Defendant's attorney, Frank Lay. Although Shuler testified that Defendant set up the meeting a day in advance, Lay, who acted as Defendant's trial counsel, indicated during his cross-examination of Ramsey and Shuler that he had no prior knowledge of his client's actions and was not complicit in the scheme.

At the meeting, Ramsey took the lead in the conversation. However, she was heavily sedated from a dental procedure earlier in the morning. Due to the procedure, her mouth was stuffed with cotton gauze, hindering her ability to speak clearly and causing her to mumble. Further, she was heavily medicated and the sedatives left her unable to recall most of the meeting.

At the meeting, Ramsey offered to recant her accusations in exchange for $5,000 apiece for herself and her mother. She also requested that her mother be allowed to live in her trailer rent-free. Ramsey testified this was in keeping with the instructions Defendant had given her mother the previous evening. Schuler stated she believed her daughter was "just curious" to see what might be offered. Schuler further testified "I knew he wasn't going to do it and she knew I wasn't going to do it, so we left and laughed about it and went on back, went on back home." Ramsey testified:

> [T]he only reason I even kept up the charade about money is because I wanted to catch him on tape trying to bribe me. I had no intentions of letting anything drop ever. I refuse. I've been living with it for almost two years, and I mean there's no way, there's no way I could let it drop.

At trial, Lay stipulated that the meeting took place but asserted that he had no prior knowledge of Ramsey and Shuler's intention to visit. Lay had attempted to record the conversation but later discovered his attempt had failed. As soon as he realized the ethical ramifications of the conversation, Lay asked Shuler and Ramsey to leave and then informed the District Attorney's office via email about what had happened. At trial, Lay thoroughly cross-examined Ramsey, Shuler, and the investigating officers about the meeting itself and the broader investigation of Defendant's alleged attempts to obstruct justice. Lay did not testify.

Defendant was tried by jury before the Honorable Zoro J. Guice, Jr., Superior Court judge presiding, at the 15 October 2012 session of superior court in Swain County. The obstruction of justice and attempted obstruction of justice charges were dismissed at the close of the State's evidence. Defendant was acquitted on attempted second-degree rape and second-degree sexual offense, but convicted of sexual battery.

Judgment on the sexual battery guilty verdict was entered on 18 October 2012. Defendant was placed on probation and required to register as a sex offender. Defendant appeals. We find no error in his trial or sentence.

### Discussion

On appeal, Defendant argues that (1) he received ineffective assistance of counsel and (2) the trial court erred in concluding that Defendant has a "reportable conviction" which subjects him to the Sex Offender and Public Protection Registration Program. We disagree.

### I. Ineffective Assistance of Counsel

**[1]** Defendant first argues that he received ineffective assistance ("IAC") from his trial counsel. We disagree.

To prevail in a claim for IAC, a defendant must show that his "(1) counsel's performance was deficient, meaning it fell below an objective standard of reasonableness, and (2) the deficient performance prejudiced the defense, meaning counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *State v. Garcell*, 363 N.C. 10, 51, 678 S.E.2d 618, 644 (2009) (citations and internal quotation marks omitted). As to the first prong of the IAC test, "[a] strong presumption exists that a counsel's conduct falls within the range of reasonable professional assistance." *State v. Frazier*, 142 N.C. App. 361, 367, 542 S.E.2d 682, 687 (2001). Further, if "there is no reasonable probability that in the absence of counsel's alleged errors the result of the proceeding would have been different, then the court need not determine whether counsel's performance was actually deficient." *State v. Braswell*, 312 N.C. 553, 563, 324 S.E.2d 241, 249 (1985).

Defendant urges that, here, he is relieved of the burden to establish prejudice, citing *State v. Choudry*, 365 N.C. 215, 717 S.E.2d 348 (2011), and *State v. James*, 111 N.C. App. 785, 433 S.E.2d 755 (1993). However, we find *James* and *Choudry* inapposite as the IAC claims in both cases were based on a narrow and specific circumstance not present here, to wit, alleged conflicts of interest arising from defense counsel's representation of multiple adverse parties. For example, in *James*, counsel represented both the defendant and a key prosecution witness. 111 N.C. App. at 790, 433 S.E.2d at 758. We observed that

> representation of the defendant as well as a prosecution witness (albeit in another matter) creates several avenues of possible conflict for an attorney. Confidential communications from either or both of a revealing nature which might otherwise prove to be quite helpful in the

preparation of a case might be suppressed. Extensive cross-examination, particularly of an impeaching nature, may be held in check. Duties of loyalty and care might be compromised if the attorney tries to perform a balancing act between two adverse interests.

*Id.* Because of these risks to the defendant's constitutional rights, we held that "the trial court must take control of the situation[and conduct a hearing]" *Id.* at 791, 433 S.E.2d at 758-59 (citation and internal quotation marks omitted). "[Thus] the failure of the trial judge to conduct an inquiry, in and of itself, constitutes reversible error." *Id.* at 791, 433 S.E.2d at 759 (citation and internal quotation marks omitted); *see also Choudry,* 365 N.C. at 226, 717 S.E.2d at 356 (noting the same presumption of prejudice in the absence of a hearing, but upholding the defendant's conviction because the trial court had conducted a conflict inquiry).

Here, there was no conflict of interest based on multiple or prior representations. Defendant's counsel never represented Ramsey or Shuler. Further, their testimony indicates they never considered Lay their attorney or contemplated retaining his services. Therefore, Defendant's argument that he is entitled to a presumption of prejudice is without merit. Accordingly, to prevail in his IAC claim, Defendant must show both deficient performance by his trial counsel and prejudice therefrom.

Defendant claims that his counsel's performance was deficient in that he was a necessary witness at Defendant's trial such that his representation of Defendant at trial violated Rule 3.7(a) of the North Carolina Rules of Professional Conduct. We are not persuaded.

Rule 3.7(a) provides:

A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless: (1) the testimony relates to an uncontested issue; (2) the testimony relates to the nature and value of legal services rendered in the case; or (3) disqualification of the lawyer would work substantial hardship on the client.

N.C.R. of Prof'l Conduct Rule 3.7(a). A witness's "testimony is 'necessary' within the meaning of the rule when it is relevant, material, and unobtainable by other means." *State v. Rogers,* __ N.C. App. __, __, 725 S.E.2d 342, 348 (citing N.C. St. Bar, 2011 Formal Ethics Opinion 1), *disc. review denied,* 366 N.C. 232, 731 S.E.2d 171 (2012).

In *Rogers,* this Court found no error in a trial court's decision to disqualify the defendant's chosen counsel based on his significant

relationship with the defendant's girlfriend, who was also a key pros-
ecution witness in the defendant's trial for the attempted murder of
her husband:

> By virtue of his relationships with both parties, [defense
> counsel] was aware of personal and sensitive informa-
> tion, including the nature of their affair, which was a
> major factor leading to the shooting. Had [defense coun-
> sel] remained as [the] defendant's counsel, he might have
> been called to testify, at which time he might have been
> asked to disclose confidential information regarding the
> relationship between [the] defendant and [the defendant's
> girlfriend/victim's wife], which information may have
> divulged [the] defendant's motive for shooting [the vic-
> tim], which in turn could compromise his duty of loyalty
> to his client.

*Id.* at __, 725 S.E.2d at 347.

Here, the testimony from Lay which Defendant claims was neces-
sary concerned Lay's meeting with Ramsey and Shuler. Defendant con-
tends this testimony could have potentially (1) cast doubt on Ramsey's
motives and character so as to undercut her credibility and (2) shown
that Defendant's trial counsel was not corrupt. As to the second conten-
tion, we fail to see how Lay's character was at all relevant or material to
the charges Defendant faced. We further observe that, to the extent Lay's
testimony on either point was relevant and material, it most certainly
was not "unobtainable by other means." *Id.* at __, 725 S.E.2d at 348. As
Defendant notes in his brief, Lay cross-examined Ramsey and Shuler
extensively about their visit to his office and the resulting discussion.
Both women admitted that Lay did not give them any money or other-
wise cooperate with their demands. Ramsey admitted that she was heav-
ily medicated during the meeting and retained little memory of it. Her
mother likewise testified to having "fluid on the brain" which affected
her memory and thinking. The women agreed that they met with Lay
because the police investigation into the obstruction was too slow. They
testified that they went to Lay's office and agreed to what Defendant
had told them he wanted. They further testified that they knew
Defendant would not actually follow through with the alleged scheme.
A police detective testified that Lay told law enforcement officers about
the meeting.

In sum, through cross-examination and closing arguments,
Defendant's counsel amply called issues with the women's credibility

to the jury's attention, and their testimony along with that of the police officer reflected well on Lay's character and suggested no corruption on his part. Because Defendant's counsel was able to make the same points through his vigorous cross-examination as he would have made as a witness, there is no reasonable probability that in the absence of the counsel's alleged errors the result of the proceeding would have been different. Ultimately, the obstruction of justice and attempted obstruction of justice charges were dismissed at the close of the State's evidence and Defendant was acquitted of all but one of the sexual misconduct charges. Defendant cannot show prejudice, and therefore cannot establish IAC. Accordingly, this argument is overruled.

*II. Sex Offender Registration*

**[2]** Defendant next argues that he was wrongfully forced to register as a sex offender prematurely because his conviction is not yet "final" insofar as his right to direct appeal under N.C. R. App. P. 4(a)(2) had not yet expired. We disagree.

This issue is a matter of statutory construction, raising only questions of law, and thus we review *de novo. In re Borden*, ___ N.C. App. ___, ___, 718 S.E.2d 683, 685 (2011) (citations omitted).

> When the language of a statute is clear and without ambiguity, it is the duty of this Court to give effect to the plain meaning of the statute, and judicial construction of legislative intent is not required. However, when the language of a statute is ambiguous, this Court will determine the purpose of the statute and the intent of the legislature in its enactment. Moreover, when confronted with a clear and unambiguous statute, courts are without power to interpolate, or superimpose, provisions and limitations not contained therein.
>
> The best indicia of the legislature's intent are the language of the statute or ordinance, the spirit of the act and what the act seeks to accomplish. Moreover, in discerning the intent of the General Assembly, statutes *in pari materia* should be construed together and harmonized whenever possible. *In pari materia* is defined as upon the same matter or subject.

*Id.* (citations and internal quotation marks omitted).

North Carolina's General Assembly has declared that "protection of the public from sex offenders is of paramount governmental interest."

N.C. Gen. Stat. § 14-208.5 (2011). The General Assembly enacted legislation requiring sex offenders to register with government agencies in order to assist law enforcement in its effort to protect the public at large. *Id.* Section 14-208.6 (4)(a) defines reportable convictions to include "a final conviction for an offense against a minor, a sexually violent offense, or an attempt to commit any of those offenses unless the conviction is for aiding and abetting." N.C. Gen. Stat. § 14-208.6 (4)(a) (2011). The definition of a "sexually violent offense" provided by section 14-208.6(5) includes any convictions for sexual battery in violation of N.C. Gen. Stat. § 14-27.5A.

At trial, the jury found Defendant guilty of sexual battery pursuant to section 14-27.5A. Therefore, Defendant has a reportable conviction and it was proper for the trial court to instruct him to register as a sex offender. Defendant, however, contends that his conviction is not yet "final" because his right to appeal under N.C. R. App. 4(a)(2) had not expired. In support of this argument, Defendant relies primarily on this court's recent decision in *Walters v. Cooper*, __ N.C. App. __, 739 S.E.2d 185, *stay granted*, __ N.C. __, 739 S.E.2d 838 (2013). However, the General Assembly's intent and the holding of *Walters* make clear that Defendant's reliance is misplaced.

In *Walters*, this Court confronted the question of whether a "Prayer for Judgment Continued ('PJC') entered upon a conviction makes that conviction a 'final conviction,' and therefore a 'reportable conviction' for the purposes of the [sex offender] registration statute." *Id.* at __, 739 S.E.2d at 186-87. This Court noted that "the term 'final conviction' has no ordinary meaning and is not otherwise defined by the [sex offender registration] statute." *Id.* This Court ultimately concluded that a PJC does not qualify as a "final conviction" due to the specific nature of a PJC sentence. *Id.* at __, 739 S.E.2d at 188.

In terms of criminal sentencing, a PJC is a unique remedial measure:

> After a defendant has been found guilty or entered a guilty plea, a trial court may (1) pronounce judgment and place it into immediate execution; (2) pronounce judgment and suspend or stay its execution; or (3) enter a PJC. A prayer for judgment continued upon payment of costs, without more, does not typically constitute an entry of judgment. However, our Supreme Court has acknowledged that a continuation of entry of judgment may lose its character as [a] true PJC and is converted into a judgment when it includes conditions amounting to punishment.

**STATE v. SMITH**

[230 N.C. App. 387 (2013)]

*Id.* at ___, 739 S.E.2d at 187 (citations and internal quotation marks omitted). In *Walters*, we "presume[d] that the legislature was aware of our prior case law, albeit in another context, interpreting the term 'final conviction' as excluding convictions which are followed by true PJCs." *Id.* at ___, 739 S.E.2d at 188.

The fact that PJCs are excluded from the court's interpretation of the term "final conviction" implies they are an exception from the general rule under section 14-208.6(5) that everyone convicted of a sexually violent offense must register as a sex offender. Because Defendant did not receive a PJC, Walters does not provide him relief.

Further, common sense and the General Assembly's intent undermine Defendant's argument. By Defendant's reasoning, no conviction for a sexually violent offense would be "final" until all appeals are exhausted. This would frustrate the General Assembly's purpose in enacting the law and make it more difficult for law enforcement to monitor dangerous sex offenders and protect public safety. Extending the registration requirement deadline to the expiration of the appeals process is unnecessary, as a defendant who successfully appeals his conviction and obtains a reversal is entitled to relief by having his name removed from the sex offender registry. Protecting public safety and facilitating law enforcement by requiring registration during the appeals process outweighs the stigma the accused may suffer from his registration during the appeals process.

NO ERROR.

Judges CALABRIA and ELMORE concur.