STATE OF NORTH CAROLINA v. DANNY LEE ATKINSON

No. 506PA82

(Filed 9 August 1983)

**Criminal Law § 86.5— impeachment of defendant—avoiding criminal charge in another state**

> The district attorney could properly ask defendant whether he was "avoiding matters" in New Jersey when he left that state where the district attorney had a good faith belief that defendant was avoiding a criminal prosecution, which constituted a specific act of misconduct. Furthermore, defendant waived objection to his response showing that he had been arrested in New Jersey on a narcotics charge by failing to move to strike such testimony.

BEFORE *Judge John Jolly, Jr.,* and a jury at the 6 October 1980 Criminal Session of ROBESON Superior Court defendant was found guilty of second degree murder. He received a sentence of imprisonment for a minimum of fifteen years and a maximum of life. Defendant failed to perfect his appeal on time and petitioned this Court for a writ of certiorari. The writ was allowed on 21 September 1982.

*Rufus L. Edmisten, Attorney General, and David E. Broome, Jr., Associate Attorney, for the state.*

*Bruce W. Huggins for defendant appellant.*

EXUM, Justice.

Defendant's sole assignment of error raises the question whether the trial court erred in overruling defendant's objection to a question asked him by the prosecutor on cross-examination. For the reasons set forth below, we conclude the trial court's ruling was proper.

The state's evidence at trial tended to show defendant and his brother, Billy Ray Atkinson, began arguing as they were driving home with their father from the Stateline Grill near the North Carolina-South Carolina border. Defendant was driving the car about midnight on 2 July 1980. He pulled the car off the road as the argument with his brother grew more heated. Their father's efforts to stop the argument were not successful and defendant shot his brother in the side of the head with a .22 caliber pistol. Billy Atkinson died shortly thereafter as a result of the wound.

Defendant testified in his own defense and his testimony tended to show he shot at his brother because his brother was threatening him and he was scared. Defendant said he intended only to frighten his brother.

The jury was instructed on second degree murder, and the lesser-included offenses of voluntary manslaughter, involuntary manslaughter and not guilty. Defendant was found guilty of second degree murder.

Defendant testified on direct examination that he grew up in North Carolina but had spent ten years in Pennsylvania, New Jersey and New York before returning to North Carolina. On cross-examination the following exchanges took place:

Q. How long have you been away from New Jersey?

A. About four years.

Q. You left in March of 1976, didn't you?

A. No, I left about September of 1976.

Q. And you were avoiding—

MR. HUGGINS: Objection.

MR. WEBSTER: —matters in New Jersey at the time you left.

MR. HUGGINS: Objection.

COURT: Overruled.

THE WITNESS: Well, can I explain that?

MR. WEBSTER: Yes, sir.

A. The only matter that I was avoiding—while I lived in New Jersey, the place I lived was a real bad place called the ghettos. And I lived there practically the whole time and we have all kinds of people there. The matter I was avoiding was a drug matter. You have all kinds of people that hang there and, see, I was standing in front of a hotel where I lived and four or five guys were standing in front of the hotel. People were selling dope and stuff. The police pulled up and a fellow drops a bag of dope beside my seat and he takes the both of

us to jail and charges us both because the man wouldn't tell that it was his, and that is the only thing I was avoiding.

Defendant argues the district attorney knew he could not ask defendant if he had been arrested for possession of drugs so he indirectly solicited testimony about defendant's drug arrest from defendant. Defendant further argues the district attorney was acting in bad faith when he asked the question. The state responds that the question asked was entirely proper, and defendant volunteered the details of the particular criminal charge against him. The state also argues that questions of the prosecutor will be presumed to be proper unless the record demonstrates otherwise; here, the record fails to show bad faith on the part of the prosecutor.

We agree with the state that the question was proper. Apparently, the prosecutor was trying to elicit from defendant the admission that he was avoiding a criminal charge in New Jersey. He did not seek to put before the jury the specific nature of the charge; rather, he was attempting to question defendant about an act of misconduct, *i.e.*, avoiding criminal prosecution.

A witness, including a criminal defendant, may be questioned about specific acts of misconduct in order for the jury to better assess the witness's credibility. *State v. Small*, 301 N.C. 407, 433, 272 S.E. 2d 128, 144 (1980); *State v. Ferdinando*, 298 N.C. 737, 742, 260 S.E. 2d 423, 427 (1979); 1 Brandis, North Carolina Evidence § 111 (2d rev. ed. of Stansbury's N. C. Evidence 1982).

This Court held in *State v. Williams*, 279 N.C. 663, 672, 185 S.E. 2d 174, 180 (1971), however, that a defendant cannot be impeached by cross-examination on whether he has been *arrested*, *indicted* or *accused* of a criminal offense unrelated to the one for which he was being tried. *See also*, 1 Brandis, North Carolina Evidence § 112 (2d rev. ed. of Stansbury's N. C. Evidence 1982). The Court in *Williams* went on to distinguish impermissible questions from proper ones about prior bad acts:

> It is permissible, for purposes of impeachment, to cross-examine a witness, including the defendant in a criminal case, by asking disparaging questions concerning collateral matters relating to his criminal and degrading conduct. Such questions relate to matters *within the knowledge of the witness,*

not to accusations of any kind made by others. We do not undertake here to mark the limits of such cross-examination except to say generally (1) the scope thereof is subject to the discretion of the trial judge, and (2) the questions must be asked in good faith.

279 N.C. at 675, 185 S.E. 2d at 181 (emphasis original) (citations omitted) *quoted in State v. Purcell,* 296 N.C. 728, 732, 252 S.E. 2d 772, 775 (1979).

Under the holdings in *Williams* and *Purcell* the district attorney could not have asked defendant, "Have you been charged with possessing illegal drugs?" However, it was permissible to inquire if defendant was "avoiding matters" in New Jersey if the district attorney had a good-faith belief defendant was avoiding something, the very avoidance of which was an act of misconduct. The record gives no indication the prosecutor acted in bad faith in asking the question; defendant's own testimony indicates he was indeed avoiding a criminal charge.

The issue of whether the information actually given by defendant in response to the prosecutor's question was admissible, as distinguished from the propriety of the question itself, is not properly before us. After defendant's answer his attorney failed to move to strike the answer. The failure to move to strike the answer waives any objection to the information elicited when the inadmissibility of the testimony appears only in the response of the witness. The motion to strike the answer or the objectionable part of it should be made as soon as it is evident the witness's response is inadmissible. *State v. Goss,* 293 N.C. 147, 155, 235 S.E. 2d 844, 850 (1977); 1 Brandis, North Carolina Evidence § 27 (2d rev. ed. of Stansbury's N. C. Evidence 1982); 4 N. C. Index 3d, Criminal Law § 162.3 (Supp. 1982).

In defendant's trial, we find

No error.