STATE OF NORTH CAROLINA v. PARISH LORENZO MATTHEWS

No. 654A01

(Filed 6 February 2004)

**1. Constitutional Law— effective assistance of counsel—concession of guilt without defendant's consent**

A defendant in a capital first-degree murder case received ineffective assistance of counsel per se based on defense counsel's concession of defendant's guilt to second-degree murder during closing arguments of the guilt-innocence phase of the trial without defendant's consent, and the case is remanded for a new

trial because: (1) *Harbison,* 315 N.C. 175 (1985), requires more than implicit consent based on an overall trial strategy and defendant's intelligence; (2) neither the trial court's order, the trial transcripts, nor the *Harbison* hearing transcripts indicate that defendant's counsel advised him they were going to concede his guilt to second-degree murder; and (3) the record does not indicate defendant knew his attorney was going to concede his guilt to second-degree murder.

**2. Homicide— first-degree murder—pretrial conference required**

The prosecutor violated Rule 24 of the North Carolina General Rules of Practice for Superior and District Courts by failing to hold a special pretrial conference in a capital first-degree murder case, and the prosecutor must petition a superior court judge for a Rule 24 conference before the State retries defendant in the instant case.

**3. Criminal Law— prosecutor's argument—name-calling— scatological language**

The prosecutor in a first-degree murder case presented an improper closing argument when he engaged in name-calling and used scatological language when referring to defendant's theory of the case.

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of death entered 26 May 2001 by Judge Clifton W. Everett, Jr., in Superior Court, Edgecombe County, upon a jury verdict finding defendant guilty of first-degree murder. On 24 June 2002, the Supreme Court allowed defendant's motion to bypass the Court of Appeals as to his appeal of additional judgments. Heard in the Supreme Court 19 November 2003.

*Roy Cooper, Attorney General, by Valerie B. Spalding, Special Deputy Attorney General, for the State.*

*William F. W. Massengale and Marilyn G. Ozer, for defendant-appellant.*

ORR, Justice.

On 7 February 2000, an Edgecombe County grand jury indicted Parish Lorenzo Matthews for one count of first-degree murder, one count of larceny, and one count of financial transaction card theft. On

6 November 2000; defendant was further indicted for second-degree burglary and attempted second-degree rape.

On 21 May 2001, prior to the start of trial, defendant pled guilty to the larceny and financial transaction card theft charges. At the end of the evidence, the trial court dismissed the attempted second-degree rape charge. On 24 May 2001, the jury found defendant guilty of first-degree murder with premeditation and deliberation and under the felony murder rule. The jury further found defendant guilty of second-degree burglary. The jury recommended that defendant be sentenced to death. The trial court imposed the death sentence, and in addition imposed a sentence of between ten and twelve months for the larceny and financial card theft, and a sentence of sixteen to twenty months for the second-degree burglary, with all three sentences running consecutively.

Defendant presented no evidence at trial, but the State's evidence tended to show the following: On 7 August 1999, defendant and Jessie Pettaway watched movies at Pettaway's residence. After leaving Pettaway's home, defendant returned later that night. He entered the home through a window and took several items belonging to Pettaway, including a cellular phone, debit card, stereo equipment, and a VCR. At some point, defendant tied Pettaway's feet and arms with a robe belt and an extension cord, placed tissue paper in Pettaway's mouth and covered her mouth with duct tape. The autopsy showed Pettaway died from asphyxiation; the tissue paper obstructed her airway.

Defendant drove away from Pettaway's home in her Nissan Pathfinder. The next day he drove the Pathfinder to meet Johnny Ball. Ball changed the automobile's license plate to an Illinois license plate and then Ball and defendant drove the automobile to Illinois.

During their drive to Illinois, defendant and Ball stopped in Sunman, Indiana, where defendant used Pettaway's debit card to purchase gas. On 20 August 1999, in Illinois, Robert Myer of the Pulaski County Sheriff's Department stopped Ball for speeding. Myer discovered that the vehicle was stolen, and found the vehicle's original license plate, along with other items, including Pettaway's cellular phone, handcuffs and a knife. Myer checked the license plate inside the Pathfinder and discovered that defendant was wanted in North Carolina for Pettaway's murder. Myer then arrested defendant.

David Hawkins, a police sergeant from Rocky Mount, North Carolina, interviewed defendant in Illinois. Defendant made a volun-

tary statement to Sergeant Hawkins in which he admitted the following: Defendant watched movies with Pettaway at her home. He then left Pettaway's home and went to see "Peeknuckle." Defendant and Peeknuckle climbed through Pettaway's window and took several items from her. Defendant helped Peeknuckle tie Pettaway's arms and legs. Peeknuckle then put a sock in Pettaway's mouth and taped her mouth. Defendant stated that Pettaway was alive when he left her. After defendant made his statement, he admitted to Sergeant Hawkins that Peeknuckle did not exist. Defendant waived extradition to North Carolina, and Sergeant Hawkins and another detective transported defendant back to Rocky Mount.

We have reviewed the assignments of error brought forward by defendant and we find reversible error in defense counsel's concession of defendant's guilt without his consent during closing arguments of the guilt-innocence phase of the trial.

[1] Defendant claims he received ineffective assistance of counsel because his attorney conceded his guilt to second-degree murder, a lesser included crime, without his consent and in violation of *State v. Harbison*, 315 N.C. 175, 337 S.E.2d 504 (1985), *cert. denied*, 476 U.S. 1123, 90 L. Ed. 2d 672 (1986). After reviewing defendant's motion for appropriate relief on this issue filed with this Court, we determined that the record on appeal contained insufficient evidence to permit this Court to determine the issue. Therefore, on 3 January 2003, this Court entered an order remanding defendant's motion for appropriate relief to Superior Court, Edgecombe County, for an evidentiary hearing. The order directed the trial court to make findings of fact and conclusions of law as to defendant's allegations of ineffective assistance of counsel. Following the evidentiary hearing, the trial court, with Judge Frank R. Brown presiding, entered its order on 30 June 2003 with extensive findings of fact and conclusions of law concluding that defendant had not received ineffective assistance of counsel, and denying defendant's motion for appropriate relief. This order, along with a transcript of the hearing was filed in this Court on 24 July 2003 and is considered an addendum to the record on appeal in this case.

Findings of fact made by the trial court pursuant to hearings on motions for appropriate relief are "binding upon the [defendant] if they were supported by evidence." *State v. Stevens*, 305 N.C. 712, 719-20, 291 S.E.2d 585, 591 (1982). "Our inquiry therefore, is to determine whether the findings of fact are supported by evidence, whether the findings of fact support the conclusions of law, and whether the

conclusions of law support the order entered by the trial court." *Stevens*, 305 at 720, 291 S.E.2d at 591; *see also, State v. Morganherring*, 350 N.C. 701, 714, 517 S.E.2d 622, 630 (1999), *cert. denied*, 529 U.S. 1024, 146 L. Ed. 2d 322 (2000).

In *Harbison*, we held that "ineffective assistance of counsel, per se in violation of the Sixth Amendment, has been established in every criminal case in which the defendant's counsel admits the defendant's guilt to the jury without the defendant's consent." *Harbison*, 315 N.C. at 180, 337 S.E.2d at 507-08. Therefore, we must determine whether the trial court's conclusion of law that "[d]efendant has failed to make any showing of ineffective assistance of trial counsel pursuant to <u>Harbison</u>" is supported by the trial court's findings of fact.

During the closing argument of the guilt-innocence phase of defendant's jury trial, one of his attorneys, Edward Simmons, stated:

There are three possible verdicts in that case. And Mr. Graham has shown you that. You have a possible verdict of guilty of first-degree murder. And there are two theories upon which the State relies for that. And we're going to talk about that in just a minute.

You have a possible verdict of guilty of second-degree murder. And then the third possibility is not guilty. I've been practicing law twenty-four years and I've been in this position many times. And this is probably the first time I've come up in front of the jury and said *you ought not to even consider that last possibility*.

And I'm not up here and I'm not telling you that that's a possibility. I'm not saying you should find Mr. Matthews not guilty. That's very unusual. And it kind of cuts against the grain of a defense lawyer. But I'm telling you in this case you ought not to find him not guilty because he is guilty of something.

(Emphasis added.) Simmons later stated: "When you look at the evidence . . . you're going to find that he's guilty of second-degree murder."

In Judge Brown's 30 June 2003 order filed in Superior Court, Edgecombe County, following the *Harbison*, the trial court found the following:

9. The trial attorneys' theory of the case was to deny first-degree murder but acknowledge that defendant was accountable,

STATE v. MATTHEWS

[358 N.C. 102 (2004)]

which is why they argued strenuously for an instruction on voluntary manslaughter . . . . Judge Everett did not give an instruction on voluntary manslaughter . . . .

. . . .

11. After the charge conference at guilt/innocence, Simmons did not ask defendant if he would concede to Simmons' arguing second-degree murder to the jury. . . .

12. . . . [Simmons] asked the jury to find the defendant guilty of second-degree murder. When it was over, defendant appeared to be angry and upset. [Defendant] said nothing to Simmons but Godwin told Simmons that defendant did not want Simmons to say or do anything else in the case.

. . . .

16. Simmons stated that the trial strategy was to try for voluntary manslaughter if the attorneys could get an instruction on it, or for second-degree murder if they could not. . . .

17. Simmons had discussed the trial strategy with Godwin and he agreed with it. Simmons had discussed the same strategy with defendant several times in depth and in great detail: i.e. trying to get a verdict of something less than first-degree murder at guilt/innocence. Defendant took part in these strategy discussions.

. . . .

19. Simmons and Godwin discussed second degree murder with defendant in the sense that anything less than first degree murder would be good. This was their trial strategy. Simmons was certain that defendant concurred with it. . . .

. . . .

26. When Simmons was giving closing argument at the guilt/innocence phase, defendant tapped Godwin on the shoulder and asked whether he heard what Simmons had just said. Prior to Simmons' return to the counsel table, defendant told Godwin to tell Simmons that he was to have nothing further to do with the case and that Godwin was to complete the case. Simmons continued to help in discussion and preparation, but Godwin did all the communicating with defendant.

27. Godwin testified that defendant never specifically said to the attorneys, "You have my permission to tell the jury that I am guilty of second-degree murder." Godwin did not recall that either he or Simmons specifically asked defendant if they could argue that he was guilty of second-degree murder. . . .

. . . .

30. The attorneys' trial strategy was to try to convince the jury that defendant was guilty of something other than first degree murder. This included pleading to the larceny charges to show that there was some culpability. Godwin did not believe that the attorneys were ever going to try to concede to second degree murder because defendant had told the officers that he did not intend to kill Pettaway, but that depended on how things turned out during the State's case.

. . . .

32. This Court finds on the basis of the sworn testimony given by [] Simmons and Godwin that defendant's consent to the trial strategy was knowing and intelligent, arrived at after much discussion, and adhered to by Simmons in closing argument as to second degree murder rather than voluntary manslaughter because voluntary manslaughter was no longer an option.

Based on these findings of fact, the trial court concluded as a matter of law that defendant "failed to make any showing of ineffective assistance of trial counsel pursuant to Harbison," and denied defendant's *Harbison* claim.

We now address whether the trial court's findings of fact support its conclusion that defendant's trial counsel did not commit *Harbison* error. The trial court found that defense counsel's trial strategy was "to convince the jury that defendant was guilty of something other than first degree murder." The trial court found that, because defendant consented to this overall strategy, and because "[d]efendant's IQ was high," defendant implicitly allowed his trial counsel to concede his guilt. However, we conclude that *Harbison* requires more than implicit consent based on an overall trial strategy and defendant's intelligence.

[T]he gravity of the consequences demands that the decision to plead guilty remain in the defendant's hands. When counsel admits his client's guilt without first obtaining the client's con-

sent, the client's rights to a fair trial and to put the State to the burden of proof are completely swept away. The practical effect is the same as if counsel had entered a plea of guilty without the client's consent. Counsel in such situations denies the client's right to have the issue of guilt or innocence decided by a jury.

*Harbison*, 315 N.C. at 180, 337 S.E.2d at 507.

Neither the trial court's order, the trial transcripts, nor the *Harbison* hearing transcripts indicate that defendant's counsel advised him they were going to concede his guilt to second-degree murder. *Harbison* requires that the decision to concede guilt to a lesser included crime "be made exclusively by the defendant." *Harbison*, 315 N.C. at 180, 337 S.E.2d at 507. Furthermore, "[b]ecause of the gravity of the consequences, a decision to plead guilty must be made knowingly and voluntarily by the defendant after full appraisal of the consequences." *Id.* at 180, 337 S.E.2d at 507. For us to conclude that a defendant permitted his counsel to concede his guilt to a lesser-included crime, the facts must show, at a minimum, that defendant *knew* his counsel were going to make such a concession. Because the record does not indicate defendant *knew* his attorney was going to concede his guilt to second-degree murder, we must conclude defendant's attorney made this concession without defendant's consent, in violation of *Harbison*. Thus, the trial court's conclusion of law that no *Harbison* error occurred is not supported by the trial court's findings of fact. Defendant's attorney committed ineffective assistance of counsel per se, and defendant is entitled to a new trial.

Although defendant's death sentence is reversed and his case is remanded to the trial court for a new trial, we take this opportunity to address two additional issues to prevent them from recurring at defendant's second trial. *See, e.g., State v. Porter*, 326 N.C. 489, 511, 391 S.E.2d 144, 158 (1990); *State v. Williams*, 317 N.C. 474, 483, 346 S.E.2d 405, 411 (1986); *State v. Stokes*, 308 N.C. 634, 652, 304 S.E.2d 184, 195 (1983).

[2] First, we conclude that the prosecutor violated Rule 24 of the North Carolina General Rules of Practice for Superior and District Courts by failing to hold a special pre-trial conference. Rule 24 states in pertinent part:

There shall be a pretrial conference in every case in which the defendant stands charged with a crime punishable by death.

STATE v. MATTHEWS

[358 N.C. 102 (2004)]

No later than ten days after the superior court obtains juris-
diction in such case, the district attorney shall apply to the pre-
siding superior court judge or other superior court judge holding
court in the district, who shall enter an order requiring the pros-
ecution and defense counsel to appear before the court within
forty-five days thereafter for the pretrial conference. Upon
request of either party at the pretrial conference the judge
may for good cause shown continue the pretrial conference for
a reasonable time.

R. Pretrial Conference in Capital Cases 24, 2001 N.C. R. Ct. (State) 74.
Rule 24 also mandates that the trial court and the parties consider
"the nature of the charges and the existence of evidence of aggravat-
ing circumstances; . . . [and] timely appointment of assistant counsel
for an indigent defendant when the State is seeking the death
penalty." *Id.*

Rule 24 provides a simple, bright-line rule, requiring prosecutors
to petition for a special pretrial conference in *all* capital cases. "Rule
24 of the Rules of Practice is mandatory." *State v. Rorie*, 348 N.C. 266,
271, 500 S.E.2d 77, 81 (1998). In the case *sub judice*, the prosecutor
violated the rule by failing to petition an Edgecombe County Superior
Court judge for a pretrial conference as the rule mandates.

"Repeated violations of the rule manifesting willful disregard for
the fair and expeditious prosecution of capital cases may result in
citation for contempt pursuant to N.C.G.S. § 5A-11(7) or other appro-
priate disciplinary action against the district attorney." *Rorie*, 348
N.C. at 270-71, 500 S.E.2d at 81. Before the State retries defendant,
the prosecutor *must* petition a superior court judge for a Rule 24 con-
ference. If the prosecutor fails to petition the superior court for a pre-
trial conference, he risks disciplinary action.

[3] Next, we address defendant's complaint that the prosecutor
presented an improper and unprofessional closing argument to
the jury. Unfortunately as we have repeatedly noted[1], complaints

---

1. *State v. Walters*, 357 N.C. 68, 105, 588 S.E.2d 344, 366 (prosecutor improper-
ly compared defendant to Hitler in his closing argument), *cert. denied,* —— U.S. ——,
157 L. Ed. 2d 320 (2003); *State v. Jones*, 355 N.C. 117, 126, 558 S.E.2d 97, 103 (2002) (va-
cating defendant's death sentence because the prosecutor improperly compared the
victim's life to those lives lost in the Columbine Shootings and the Oklahoma City
Federal Building bombing); *State v. Gell*, 351 N.C. 192, 216, 524 S.E.2d 332, 347 (pros-
ecutors improperly made biblical arguments to the jury), *cert. denied,* 531 U.S. 867, 148
L. Ed. 2d 110, (2000); *State v. Smith*, 279 N.C. 163, 165-67, 181 S.E.2d 458, 459-60 (1971)
(reversing defendant's rape conviction where the prosecutor improperly described

STATE v. MATTHEWS

[358 N.C. 102 (2004)]

such as defendant's come before this Court in criminal cases far too frequently. This case is remanded for other reasons, and it is not necessary for this Court to reach the issue of improper closing argument in the case at hand. However, we feel compelled to instruct the attorneys and courts of this State, once again, on how to conduct themselves in a proper and professional manner during closing argument.

"When the prosecutor becomes abusive, injects his personal views and opinions into the argument before the jury, he violates the rules of fair debate." *State v. Jones*, 355 N.C. 117, 130, 558 S.E.2d 97, 105 (2002) (quoting *State v. Smith*, 279 N.C. 163, 166, 181 S.E.2d 458, 460 (1971)). The prosecutor's closing argument in the case at bar was improper because the prosecutor engaged in name-calling and used scatological language when referring to defendant's theory of the case. During closing argument the prosecutor characterized defendant as a "monster," "demon," "devil," "a man without morals" and as having a "monster mind." Such improper characterizations of defendant amounted to no more than name-calling and did not serve the State because the prosecutor was not arguing the evidence and the conclusions that can be inferred therefrom. *See* N.C.G.S. § 15A-1230(a) (2003).

Defendant also complains that the prosecutor's use of scatological language was inappropriate and thus improper. We agree. In his closing argument, the prosecutor attacked the defendant's theory of the case as follows:

> The defendant, I believe through Mr. Simmons, is going to be portrayed as somebody who is not a monster; as somebody who made a mistake; as somebody who probably did wrong by going in that house; as somebody who only wanted the stuff in the house; as somebody who wouldn't harm a flea; as somebody who would not kill; as somebody who regretted what they did; as somebody who was sorry for what they did; as somebody who, just resist the urge to laugh, who tried to save her.

> *That's bull crap.*

(Emphasis added.)

---

defendant as "lower than the bone belly of a cur dog"); *State v. Miller*, 271 N.C. 646, 660, 157 S.E.2d 335, 346 (1967) (granting defendant a new trial where the prosecutor expressed his personal opinion that a witness was lying).

STATE v. MATTHEWS

[358 N.C. 102 (2004)]

This Court has repeatedly warned that closing arguments must be kept within the bounds of civility. *Walters*, 357 N.C. at 108, 588 S.E.2d at 368; *Jones*, 355 N.C. at 129, 558 S.E.2d at 105. Though "[g]enerally, trial counsel is allowed wide latitude in the scope of jury arguments," *State v. Hill*, 347 N.C. 275, 298, 493 S.E.2d 264, 277 (1997), *cert. denied*, 523 U.S. 1142, 140 L. Ed. 2d 1099 (1998), "a trial attorney may not make uncomplimentary comments about opposing counsel, and should 'refrain from abusive, vituperative, and opprobrious language, or from indulging in invectives.' " *State v. Sanderson*, 336 N.C. 1, 10, 442 S.E.2d 33, 39 (1994) (quoting *State v. Miller*, 271 N.C. 646, 659, 157 S.E.2d 335, 346 (1967)).

In the case *sub judice*, the prosecutor's closing argument was improper because his personal opinion about defendant's theory of the case exceeded proper boundaries and he engaged in improper name-calling.

In sum, improper closing arguments cannot be tolerated. We again admonish the attorneys and trial courts of this State to reevaluate the need for melodrama and theatrics over civil, reasoned persuasion.

> A well-reasoned, well articulated closing argument can be a critical part of winning a case. However, such argument, no matter how effective, must: (1) be devoid of counsel's personal opinion; (2) avoid name-calling and/or references to matters beyond the record; (3) be premised on logical deductions, not on appeals to passion or prejudice; and (4) be constructed from fair inferences drawn only from evidence properly admitted at trial.

*Jones*, 355 N.C. at 135, 558 S.E.2d at 108. We remind the prosecutor that the State's interest "in a criminal prosecution is not that it shall win a case, but that justice shall be done." *Berger v. United States*, 295 U.S. 78, 88, 79 L. Ed. 1314, 1321 (1935).

Finally, while defendant assigns numerous errors to all phases of his trial, we decline to address every potential error as these errors are unlikely to recur at a new trial. We conclude as a matter of law that defense counsel's admission that defendant was guilty of second-degree murder constituted ineffective assistance of counsel per se. For the foregoing reasons, we conclude the trial court's errors were prejudicial to defendant's right to a fair trial, and thus defendant is entitled to a new trial.

NEW TRIAL.