STROUD, Judge.
 

 *267
 
 Larry Cook ("defendant") appeals from a judgment entered on a jury verdict finding him guilty of first-degree murder. Defendant argues that (1) his trial counsel rendered ineffective assistance of counsel; and (2) the trial court erred in admitting hearsay testimony of the victim's sister. We find no error.
 

 I. Background
 

 In 2007, defendant approached Brittney Turner ("the victim") at a bus stop and offered to give her money for lunch. Brittney accepted, and the two began a romantic relationship which lasted for the next five years. Brittney allowed defendant to borrow her car until 15 August 2012, when the car overheated while defendant was driving it. While Brittney was at work, defendant and another man attempted to fix the car at the house of Brittney's mother, Pamela Turner, but they were unsuccessful. Pamela and Daisha Turner, the victim's sister, dropped off defendant at his residence at a motel. That night, while Pamela was at work, Brittney and Daisha stayed at Pamela's house. During this time, defendant made numerous threatening phone calls to Brittney, and Brittney told Daisha that she was afraid of defendant.
 

 The next morning, defendant repeatedly called Pamela to tell her that he was hungry. After Brittney and Pamela had run some errands, Brittney, Pamela, Daisha, and John Turner,
 
 [1]
 
 Daisha's four-year-old son, drove to defendant's residence at the motel to deliver some groceries and the clothes that defendant had left in Brittney's car. After Pamela
 
 *572
 
 parked the car, Brittney grabbed defendant's clothes, walked alone to defendant's door, and knocked on his door. Defendant opened the door and, without warning, began repeatedly stabbing Brittney in the neck with a screwdriver and a knife. Pamela and Daisha immediately ran to Brittney's aid. Defendant stabbed Pamela in the neck while Brittney and Daisha ran toward the motel lobby. Defendant chased Brittney into the motel lobby and continued stabbing her there. Pamela and Daisha again ran to Brittney's aid. Defendant stabbed Pamela in her abdomen twice and stabbed Daisha in her neck while Brittney ran to the highway to stop a car for help. After Brittney stopped a car on the highway, she collapsed, succumbing to her numerous injuries. During these events, John was running around in the motel parking lot. While Pamela grabbed John
 
 *268
 
 and placed him back in her car, defendant walked up to her car, slit her tires, and broke her car windows and then walked back up to his room.
 

 On 1 October 2012, a grand jury indicted defendant for first-degree murder and two counts of assault with a deadly weapon with intent to kill inflicting serious injury.
 
 See
 
 N.C. Gen.Stat. §§ 14-17, -32(a) (2011). Before trial, defendant admitted that he had killed Brittney Turner and was culpable for "some criminal conduct" during an inquiry pursuant to
 
 State v. Harbison,
 

 315 N.C. 175
 
 ,
 
 337 S.E.2d 504
 
 (1985),
 
 cert. denied,
 

 476 U.S. 1123
 
 ,
 
 106 S.Ct. 1992
 
 ,
 
 90 L.Ed.2d 672
 
 (1986). At trial, both Pamela Turner and Daisha Turner testified, and the State proffered video recordings of defendant's attack, taken from the motel's surveillance system. On 23 May 2014, the jury convicted defendant of first-degree murder under theories of both premeditation and deliberation and felony murder. The jury also convicted defendant of assault with a deadly weapon with intent to kill inflicting serious injury with respect to Pamela Turner and assault with a deadly weapon inflicting serious injury with respect to Daisha Turner. The trial court sentenced defendant to life imprisonment without parole for the first-degree murder conviction and arrested judgment on defendant's other convictions. Defendant gave timely notice of appeal.
 

 II. Ineffective Assistance of Counsel ("IAC")
 

 Defendant argues that his trial counsel rendered ineffective assistance of counsel, because in closing argument, his trial counsel (1) stated that he was not advocating that the jury find defendant not guilty; and (2) "repeatedly emphasiz[ed] the dreadfulness of the crime[s]."
 

 A. Concession of Guilt
 

 Defendant argues that his trial counsel's statement in closing argument that he was not advocating that the jury find defendant not guilty exceeded the scope of the consent he gave during the
 
 Harbison
 
 inquiry. "[I]neffective assistance of counsel, per se in violation of the Sixth Amendment, has been established in every criminal case in which the defendant's counsel admits the defendant's guilt to the jury without the defendant's consent."
 
 Harbison,
 

 315 N.C. at 180
 
 ,
 
 337 S.E.2d at 507-08
 
 .
 

 In
 
 Harbison,
 
 the defendant, who was charged with murder, "steadfastly maintained that he acted in self-defense" throughout the trial.
 
 Id.
 
 at 177,
 
 337 S.E.2d at 506
 
 . But in closing argument, his counsel, without his knowledge or consent, "express[ed] his personal opinion that [the defendant] should not be found innocent but should be found guilty of manslaughter."
 

 Id.,
 

 337 S.E.2d at 506
 
 . Our Supreme Court held that trial counsel had rendered
 
 per se
 
 ineffective assistance of counsel for the following reason:
 

 *269
 
 [T]he gravity of the consequences demands that the decision to plead guilty remain in the defendant's hands. When counsel admits his client's guilt without first obtaining the client's consent, the client's rights to a fair trial and to put the State to the burden of proof are completely swept away. The practical effect is the same as if counsel had entered a plea of guilty without the client's consent. Counsel in such situations denies the client's right to have the issue of guilt or innocence decided by a jury.
 

 Id.
 
 at 180,
 
 337 S.E.2d at 507
 
 .
 

 Similarly, in
 
 State v. Matthews,
 
 in closing argument, the defendant's trial counsel argued
 
 *573
 
 that the jury "ought not to even consider" acquitting the defendant but that they should find the defendant guilty of second-degree murder.
 
 State v. Matthews,
 

 358 N.C. 102
 
 , 106,
 
 591 S.E.2d 535
 
 , 539 (2004). The defendant moved for appropriate relief based on ineffective assistance of counsel, but the trial court denied the motion, because it concluded that the "defendant [had] implicitly allowed his trial counsel to concede his guilt" by consenting to his counsel's overall trial strategy "to convince the jury that [the] defendant was guilty of something other than first degree murder" and because his IQ was high.
 
 Id.
 
 at 105-08, 538-40. Our Supreme Court disagreed with the trial court and held:
 

 For us to conclude that a defendant permitted his counsel to concede his guilt to a lesser-included crime, the facts must show, at a minimum, that defendant
 
 knew
 
 his counsel were going to make such a concession. Because the record does not indicate defendant
 
 knew
 
 his attorney was going to concede his guilt to second-degree murder, we must conclude defendant's attorney made this concession without defendant's consent, in violation of
 
 Harbison.
 

 Id.
 
 at 109,
 
 591 S.E.2d at 540
 
 .
 

 In contrast, in
 
 State v. McNeill,
 
 the defendant stipulated in writing that he "did inflict multiple stab wounds" on the victim and that "these wounds caused her death."
 
 State v. McNeill,
 

 346 N.C. 233
 
 , 237,
 
 485 S.E.2d 284
 
 , 286 (1997) (brackets omitted),
 
 cert. denied,
 

 522 U.S. 1053
 
 ,
 
 118 S.Ct. 704
 
 ,
 
 139 L.Ed.2d 647
 
 (1998). The trial court conducted a
 
 Harbison
 
 inquiry and determined that the defendant had "knowingly, voluntarily, and understandingly consented to the stipulation[.]"
 
 Id.
 
 at 238,
 
 485 S.E.2d at 287
 
 . In closing argument, the defendant's counsel argued that "this is not a case of first degree murder; it's a case of second-degree murder," and that counsel "has the permission of [the] defendant to tell you that he's guilty
 
 *270
 
 of second degree murder."
 
 Id.
 
 at 237,
 
 485 S.E.2d at 286
 
 (brackets omitted). The defendant on appeal argued that his trial counsel had rendered ineffective assistance of counsel under
 
 Harbison,
 
 because his " stipulation was not intended to be a concession to second-degree murder."
 

 iD.,
 

 485 s.E.2D at 286. OUr sUpreme cOurt rejected the defendant's argument and distinguished
 
 Harbison:
 

 Harbison
 
 is distinguishable. Significantly, there the defendant claimed self-defense. By contrast, defendant here stipulated in writing to having stabbed the victim and proximately caused her death. Second-degree murder is the unlawful killing of another human being with malice but without premeditation and deliberation. The intent necessary to support a conviction for second-degree murder is the intent to inflict the wound which produces the homicide. Indeed, malice is presumed where the defendant intentionally assaults another with a deadly weapon, thereby causing the other's death. The stipulation defendant entered concedes each of these elements and therefore supports a verdict of second-degree murder. In arguing in accord with defendant's stipulation, defense counsel cannot be said to have rendered ineffective legal assistance.
 

 Id.
 
 at 237-38,
 
 485 S.E.2d at 287
 
 (citations omitted). Our Supreme Court concluded: "Where, as here, a defendant stipulates to the elements of an offense, defense counsel may infer consent to admit defendant's guilt of that offense."
 
 Id.
 
 at 238,
 
 485 S.E.2d at 287
 
 .
 

 Similarly, here, the trial court conducted the following
 
 Harbison
 
 inquiry:
 

 THE COURT: ....
 

 Your lawyer, Mr. Carpenter, has indicated this morning that in his-in jury selection that he intends to concede or admit in front of the jury that, if I understood him correctly-
 

 And please don't hesitate to interrupt me, Mr. Carpenter, if I say something that indicates to you that I misunderstood what you were saying.
 

 -but as I understand it, [defendant], your lawyer is intending to
 
 admit during jury selection that you killed
 

 *271
 
 [
 
 the victim
 
 ], and I don't know if he's going to go into-if he'll-during jury selection what questions might arise about lack of mental capacity, but with the understanding that the defense, then, during the case will be that you lacked the mental capacity to form the intent to premeditate and to deliberate,
 
 *574
 
 and, therefore, you would not be guilty of first degree murder. Is this-has Mr. Carpenter discussed with you this strategy?
 

 DEFENDANT: Yes, sir.
 

 THE COURT: And do you agree with it?
 

 DEFENDANT: Yes, sir.
 

 THE COURT: Do you understand that, even if Mr. Carpenter recommends this, that you're not bound by his recommendation? Do you understand that if you feel that nothing should be admitted that Mr. Carpenter would not be allowed to admit anything, that that's your-ultimately, you-I encourage you to have considered the advice of your lawyer, but do you understand ultimately that is your decision and your decision alone as to whether any element of any crime is admitted to the jury? Do you understand that?
 

 DEFENDANT: Yes, sir.
 

 THE COURT: And have you given your consent and do you still give your consent for your lawyer to make that admission before the jury during opening statements and/or during jury selection?
 

 DEFENDANT: Yes, sir.
 

 THE COURT: Do you understand that if he makes that admission that it makes it very likely that the jury may find you guilty of some offense?
 

 DEFENDANT: Yes, sir.
 

 THE COURT: Thank you, [defendant]. You may be seated.
 

 Based upon my inquiry of [defendant], I find as a fact and conclude as a matter of law that [
 
 defendant] has knowingly, intelligently, and voluntarily, and with full
 

 *272
 

 knowledge and awareness of the possible consequences, agreed and consented to a trial strategy whereby his attorney, Mr. Carpenter, acknowledges the defendant's culpability for some criminal conduct in the actions now on trial, and that [defendant] has made this decision after having been fully advised and [apprised] of the possible consequences of such a strategy.
 

 (Emphasis added.)
 

 In closing argument, defendant's counsel stated:
 

 With the mental health issues that we presented to you, ladies and gentlemen, today,
 
 are we saying to you that
 
 [
 
 defendant
 
 ]
 
 committed no crime and he should somehow walk, or something to that effect? Absolutely not.
 

 On a charge of first-degree murder, you'll also receive a second charge of second-degree murder, also a very serious felony charge. Those will be the two charges for your consideration for the homicide.
 

 (Emphasis added.)
 

 Like in
 
 McNeill,
 
 defendant here "knowingly, intelligently, and voluntarily, and with full knowledge and awareness of the possible consequences" admitted that he had killed the victim and that he had "culpability for some criminal conduct[.]"
 
 See
 

 id.
 
 at 237-38,
 
 485 S.E.2d at 286-87
 
 . Defendant's counsel's trial strategy was to convince the jury that defendant lacked the mental capacity necessary for premeditation and deliberation and was therefore not guilty of first-degree murder. Defendant's counsel called only two witnesses, both of whom were psychologists and testified as expert witnesses. The first expert witness opined that defendant suffered from a mild neurocognitive disorder, and the second expert witness opined that defendant "lacked the mental capacity to consider the consequences of his behavior when he killed [the victim.]" By admitting that he killed the victim and that he was guilty of "some criminal conduct[,]" defendant conceded that he was guilty of a homicide offense.
 
 See
 

 id.
 
 at 238,
 
 485 S.E.2d at 287
 
 ("Where, as here, a defendant stipulates to the elements of an offense, defense counsel may infer consent to admit defendant's guilt of that offense.").
 

 Defendant responds that although he acknowledged that he had "culpability for some criminal conduct[,]" he did not specifically admit that he was guilty of second-degree murder. But defendant's trial counsel did not argue that defendant was guilty of second-degree murder;
 

 *273
 
 rather, defendant's trial counsel stated that he was not advocating that the jury find defendant not guilty. At first blush, this distinction may seem to be too fine a point given that second-degree
 
 *575
 
 murder and first-degree murder were the only homicide offenses submitted to the jury. But defendant never requested that any other homicide offense be submitted to the jury. On appeal, defendant argues that the evidence supported a conviction of voluntary manslaughter. But defendant does not argue that the trial court erred in failing to submit a jury instruction on the lesser offense of voluntary manslaughter, nor does defendant argue that his trial counsel rendered ineffective assistance of counsel by not requesting this instruction. Defendant admitted that he had killed the victim and that he was culpable "for some criminal conduct[,]" and in closing argument, defendant's trial counsel stated that he was not advocating that the jury find defendant not guilty. Accordingly, we hold that defendant's trial counsel did not argue beyond the scope of defendant's concession of guilt.
 

 We note that in
 
 McNeill,
 
 the defendant's stipulation that he "did inflict multiple stab wounds" on the victim and that "these wounds caused her death" is very similar to defendant's concession here, and our Supreme Court held that that stipulation conceded each of the elements of second-degree murder.
 
 See id.
 
 at 23738,
 
 485 S.E.2d at 286-87
 
 (brackets omitted).
 

 Defendant also argues that the facts here are analogous to the facts in
 
 Harbison
 
 and
 
 Matthews.
 

 See
 

 Harbison,
 

 315 N.C. at 177-78
 
 ,
 
 337 S.E.2d at
 
 506 ;
 
 Matthews,
 

 358 N.C. at 106-09
 
 ,
 
 591 S.E.2d at 539-40
 
 . But we distinguish
 
 Harbison
 
 and
 
 Matthews,
 
 because in both of those cases, the defendant never expressly consented to any concession of guilt, but here the trial court conducted an inquiry and concluded that defendant "knowingly, intelligently, and voluntarily, and with full knowledge and awareness of the possible consequences" admitted that he had killed the victim and was culpable "for some criminal conduct[.]"
 
 See
 

 Harbison,
 

 315 N.C. at 177-78
 
 ,
 
 337 S.E.2d at
 
 506 ;
 
 Matthews,
 

 358 N.C. at 106-09
 
 ,
 
 591 S.E.2d at 539-40
 
 . Following
 
 McNeill,
 
 we hold that defendant's trial counsel did not deprive defendant of effective assistance of counsel by stating in closing argument that he was not advocating that the jury find defendant not guilty.
 
 See
 

 McNeill,
 

 346 N.C. at 237-38
 
 ,
 
 485 S.E.2d at 286-87
 
 .
 

 B. Emphasis of Dreadfulness of Crimes
 

 Defendant next argues that his trial counsel rendered ineffective assistance of counsel by "repeatedly emphasizing the dreadfulness of the crime[s]" in closing argument. Defendant characterizes his trial
 
 *274
 
 counsel's emphasis as a
 
 Harbison
 
 violation, because his trial counsel's statements exceeded the scope of the consent he gave during a
 
 Harbison
 
 -like inquiry in which he consented to his trial counsel describing the video recordings of the crimes as "very graphic and very upsetting."
 

 In closing argument, defendant's trial counsel argued:
 

 We talked about the surveillance video during jury selection. We talked about how graphic it would be. It was horrible. It was scary. No human being should ever have to go through what any of the people who were there went through, especially [the victim]. There's no disputing that. But a trial is not a popularity contest. It's not about who you like or don't like. It's not about emotions. It's not about who your heart goes out for.
 

 This trial's not about whether or not what [defendant] did on August 16
 
 th
 
 , 2012 was a horrible, terrible crime. It was. This trial is about [defendant's] mental capacity on August 16
 
 th
 
 , 2012.
 

 ....
 

 I can't stand here before you and put into words or to justice how difficult I'm sure it was for [the victim's family] to sit here and live through this and go through this, and I can tell you that I'm sorry. That's an understatement, ladies and gentlemen.
 

 At the same time, I'm representing [defendant], and we believe that on that day, August 16
 
 th
 
 , 2012, [defendant] had mental disorders on the day that he killed [the victim] and on the day of the assaults, and I had a duty to present those mental disorders to you in this case, and I hope you can understand that.
 

 *576
 
 Why is the mental health of a person who's committed a crime important? It's important because our legislature and our courts say it is. It is the law of our state. Our law says it matters.
 

 ....
 

 I'm not [going to] talk about the videos again because the videos are very clear. You've seen them with your own eyes. I don't need to tell you what they look like; you saw how horrible they were.
 

 ....
 

 *275
 
 And certainly I do not-I'll say it again. I don't ignore the fact that these crimes that you saw on the videotape were horrible for every person [who] was there, including that little boy who was right in the middle of it, but that's not for deliberation.
 

 We're not deciding how horrible it is. We're trying to decide mental capacity, whether or not [defendant] had the mental capacity to commit the crime-the three crimes that he's charged with, and I would contend that he did not.
 

 We preliminarily note that although we appreciate the caution exercised by defendant's trial counsel and the trial court in conducting a
 
 Harbison
 
 -like inquiry,
 
 Harbison
 
 is inapposite to this issue as this issue does not relate to any concession of guilt made by defendant's trial counsel.
 
 See
 

 Harbison,
 

 315 N.C. at 180
 
 ,
 
 337 S.E.2d at 507-08
 
 . Rather, defendant is challenging his counsel's trial strategy in describing defendant's crimes as "horrible." Accordingly, we employ the two-part
 
 Strickland v. Washington
 
 analysis to this component of defendant's IAC claim:
 

 To prevail in a claim for IAC, a defendant must show that his (1) counsel's performance was deficient, meaning it fell below an objective standard of reasonableness, and (2) the deficient performance prejudiced the defense, meaning counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. As to the first prong of the IAC test, a strong presumption exists that a counsel's conduct falls within the range of reasonable professional assistance. Further, if there is no reasonable probability that in the absence of counsel's alleged errors the result of the proceeding would have been different, then the court need not determine whether counsel's performance was actually deficient.
 

 State v. Smith,
 

 230 N.C.App. 387
 
 , 390,
 
 749 S.E.2d 507
 
 , 509 (2013) (citations, quotation marks, and brackets omitted) (applying IAC analysis from
 
 Strickland v. Washington,
 

 466 U.S. 668
 
 ,
 
 104 S.Ct. 2052
 
 ,
 
 80 L.Ed.2d 674
 
 (1984) ),
 
 cert. denied,
 

 367 N.C. 532
 
 ,
 
 762 S.E.2d 221
 
 (2014).
 

 Here, in closing argument, defendant's trial counsel pointed out to the jury that while defendant's crimes were "horrible[,]" the gravity of his crimes was not the issue they had to determine. Rather, defendant's trial
 
 *276
 
 counsel was impressing on the jury that they should base their decision on whether they believed defendant lacked the mental capacity necessary for premeditation and deliberation. We therefore hold that defendant has failed to rebut the "strong presumption ... that a counsel's conduct falls within the range of reasonable professional assistance."
 
 See
 

 id.,
 

 749 S.E.2d at 509
 
 (citation omitted).
 

 In addition, "there is no reasonable probability that in the absence of counsel's alleged errors the result of the proceeding would have been different," since the State proffered overwhelming evidence of defendant's guilt of the first-degree murder offense.
 
 See
 

 id.,
 

 749 S.E.2d at 509
 
 . In addition to the video recordings showing defendant repeatedly stabbing the victim, the State proffered the testimony of the victim's mother and sister.
 
 See
 

 State v. Taylor,
 

 337 N.C. 597
 
 , 608,
 
 447 S.E.2d 360
 
 , 367 (1994) ("From the vicious assault and from the multiple wounds, many of which must have been inflicted after the victim had been felled and rendered helpless, the jury could reasonably infer that the defendant acted with premeditation and deliberation."). We also note that the jury found defendant guilty of first-degree murder under both a theory of premeditation and deliberation and a theory of felony murder based on either of defendant's felony assault offenses on the victim's
 
 *577
 
 mother and sister. Since defendant's trial counsel's performance was not deficient and "there is no reasonable probability that in the absence of counsel's alleged errors the result of the proceeding would have been different," we hold that defendant has failed to demonstrate that he was deprived of effective assistance of counsel.
 
 See
 

 Smith,
 

 230 N.C.App. at 390
 
 ,
 
 749 S.E.2d at 509
 
 (citation omitted).
 

 III. Admission of Evidence
 

 Defendant next argues that the trial court erred in admitting hearsay testimony of the victim's sister, Daisha Turner, over his counsel's objection.
 

 A. Preservation of Error
 

 The State argues that defendant waived this issue, as his counsel did not state the ground for his objection. "In order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make
 
 if the specific grounds were not apparent from the context.
 
 " N.C.R.App. P. 10(a)(1) (emphasis added). We examine defendant's objection in context:
 

 *277
 
 [Prosecutor]: So [you and the victim] were relaxing and sitting around[?]
 

 [Daisha Turner]: Yes, and at one point [the victim] confided in me. At one point she confided in me, and
 
 she was telling me
 
 about the relationship more than what I knew, and that she was scared of [defendant].
 

 [Defendant's counsel]: Objection.
 

 [Prosecutor]:
 
 Present sense impression.
 

 THE COURT: Objection overruled.
 

 [Prosecutor]: Okay. She had told you that she was scared of him[?]
 

 [Daisha Turner]: Yes.
 

 (Emphasis added.)
 

 Viewed in context, it is "apparent" that defendant's objection was based on hearsay.
 
 See
 
 id.
 

 The prosecutor immediately understood this ground for defendant's objection, as evidenced by his argument that Ms. Turner's testimony fit within the present-sense-impression hearsay exception.
 
 See
 
 N.C. Gen.Stat. § 8C-1, Rule 803(1) (2013) (providing that a "statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter" is an exception to the general rule that hearsay evidence is inadmissible). In addition, defendant had made several hearsay objections immediately before this particular objection, and the trial court had cautioned Ms. Turner three times not to say what the victim said. Accordingly, we hold that the ground for defendant's objection was "apparent from the context."
 
 See
 
 N.C.R.App. P. 10(a)(1).
 

 Relying on
 
 State v. Atkinson
 
 and
 
 State v. Teeter,
 
 the State next argues that defendant waived this issue because his counsel did not move to strike Ms. Turner's testimony.
 
 See
 

 State v. Atkinson,
 

 309 N.C. 186
 
 , 189,
 
 305 S.E.2d 700
 
 , 703 (1983) ("The failure to move to strike the answer waives any objection to the information elicited when the inadmissibility of the testimony appears only in the response of the witness.");
 
 State v. Teeter,
 

 85 N.C.App. 624
 
 , 630,
 
 355 S.E.2d 804
 
 , 808,
 
 appeal dismissed and disc. review denied,
 

 320 N.C. 175
 
 ,
 
 358 S.E.2d 67
 
 (1987). We distinguish
 
 Atkinson
 
 and
 
 Teeter.
 

 In
 
 Atkinson,
 
 on cross-examination, the prosecutor sought "to elicit from [the] defendant the admission that he was avoiding a criminal
 
 *278
 
 charge in New Jersey."
 
 Atkinson,
 

 309 N.C. at 188
 
 ,
 
 305 S.E.2d at 702
 
 . The prosecutor "did not seek to put before the jury the specific nature of the charge; rather, he was attempting to question [the] defendant about an act of misconduct,
 
 i.e.,
 
 avoiding criminal prosecution."
 

 Id.,
 

 305 S.E.2d at 702
 
 . The defendant's counsel objected to the prosecutor's question, and the trial court overruled the objection.
 
 Id.
 
 at 187,
 
 305 S.E.2d at 701-02
 
 . The defendant then volunteered the details of the criminal charge, and his counsel did not object or move to strike his answer.
 
 Id.
 
 at 187-88,
 
 305 S.E.2d at 702
 
 . Our Supreme Court held that the prosecutor's question was proper but that "[t]he issue of whether the information actually given by defendant in response to the prosecutor's question was admissible, as distinguished
 
 *578
 
 from the propriety of the question itself, [was] not properly before [the Court]."
 
 Id.
 
 at 188-89,
 
 305 S.E.2d at 702-03
 
 . In
 
 Teeter,
 
 the defendant on appeal argued that an expert witness "was improperly permitted to state an opinion concerning the credibility of the prosecuting witness and the guilt or innocence of [the] defendant[,]" but this Court held that the defendant had waived this issue, because the "defendant neither objected to the question nor moved to strike the answer."
 
 Teeter,
 

 85 N.C.App. at 628-30
 
 ,
 
 355 S.E.2d at 807-08
 
 .
 

 In contrast, here, defendant objected to Ms. Turner's answer. Unlike the defendants in
 
 Atkinson
 
 and
 
 Teeter
 
 who failed to object to the allegedly inadmissible answers of the witnesses, defendant "presented to the trial court a timely request, objection,
 
 or
 
 motion" to the testimony that he specifically challenges on appeal.
 
 See
 
 N.C.R.App. P. 10(a)(1) (emphasis added);
 
 Atkinson,
 

 309 N.C. at 187-88
 
 ,
 
 305 S.E.2d at
 
 701-02 ;
 
 Teeter,
 

 85 N.C.App. at 630
 
 ,
 
 355 S.E.2d at 808
 
 .
 

 Relying on
 
 State v. Whitley,
 
 the State finally argues that defendant waived this issue because after defendant's objection, Ms. Turner
 
 immediately
 
 repeated the challenged testimony.
 
 See
 

 State v. Whitley,
 

 311 N.C. 656
 
 , 661,
 
 319 S.E.2d 584
 
 , 588 (1984) ("Where evidence is admitted over objection, and the same evidence has been previously admitted or is later admitted without objection, the benefit of the objection is lost."). We distinguish
 
 Whitley.
 

 There, the defendant objected to a detective's use of the term "crime scene" in his testimony.
 

 Id.
 

 at 660
 
 ,
 
 319 S.E.2d at 587
 
 . Our Supreme Court held that the defendant had waived this issue, because the defendant did not object to the detective's use of the term on four other occasions in his testimony.
 

 Id.
 

 at 660-61
 
 ,
 
 319 S.E.2d at 587-88
 
 . In contrast, here, the prosecutor asked Ms. Turner the following clarifying question
 
 immediately
 
 after the trial court overruled defendant's objection:
 

 *279
 
 "[The victim] had told you that she was scared of him[?]" Ms. Turner responded: "Yes." Accordingly, we hold that defendant has preserved this issue for appellate review.
 
 See
 

 State v. Dalton,
 
 --- N.C.App. ----, ----,
 
 776 S.E.2d 545
 
 , 550 (rejecting a similar waiver argument in the context of a closing argument),
 
 temporary stay allowed,
 
 - -- N.C. ----,
 
 777 S.E.2d 72
 
 (2015).
 

 B. Standard of Review
 

 "This Court reviews a trial court's ruling on the admission of evidence over a party's hearsay objection
 
 de novo.
 
 "
 
 State v. Hicks,
 
 ---N.C.App. ----, ----,
 
 777 S.E.2d 341
 
 , 348 (2015),
 
 disc. review denied,
 
 - -- N.C. ----,
 
 781 S.E.2d 606
 
 (2016).
 

 C. Analysis
 

 On appeal, the State argues that Ms. Turner's statement was admissible under both the present-sense-impression hearsay exception and the state-of-mind hearsay exception.
 
 See
 
 N.C. Gen.Stat. § 8C-1, Rule 803(1), (3). Because the state-of-mind hearsay exception better fits the facts of this case, we will address only whether Ms. Turner's statement was admissible under that exception. We note that although the trial court did not admit her statement under the state-of-mind hearsay exception, we generally uphold a trial court's ruling "if it is correct upon any theory of law[.]"
 
 Cf.
 

 Opsahl v. Pinehurst Inc.,
 

 81 N.C.App. 56
 
 , 63,
 
 344 S.E.2d 68
 
 , 73 (1986) (citation omitted) (discussing this general rule in the context of contract law),
 
 disc. review improvidently allowed per curiam,
 

 319 N.C. 222
 
 ,
 
 353 S.E.2d 400
 
 (1987) ;
 
 State v. Coffey,
 

 326 N.C. 268
 
 , 285-86,
 
 389 S.E.2d 48
 
 , 58 (1990) (upholding the trial court's evidentiary ruling despite finding that the trial court had admitted the challenged statement under the wrong hearsay exception);
 
 State v. McElrath,
 

 322 N.C. 1
 
 , 15, 19,
 
 366 S.E.2d 442
 
 , 450, 452 (1988) (same).
 

 Hearsay is defined as a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. As a general rule, hearsay is inadmissible at trial. [North Carolina Rules of Evidence] 803 and 804, however, provide exceptions and permit the admission of hearsay statements under certain circumstances.
 

 State v. Morgan,
 

 359 N.C. 131
 
 , 154,
 
 604 S.E.2d 886
 
 , 900 (2004) (citations and quotation
 
 *579
 
 marks omitted),
 
 cert. denied,
 

 546 U.S. 830
 
 ,
 
 126 S.Ct. 47
 
 ,
 
 163 L.Ed.2d 79
 
 (2005) ;
 
 see also
 
 N.C. Gen.Stat. § 8C-1, Rules 801, 802, 803, 804 (2013). North Carolina Rule of Evidence 803(3) provides that a "statement of
 
 *280
 
 the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will" is admissible as a hearsay exception. N.C. Gen.Stat. § 8C-1, Rule 803(3).
 

 "It is well established in North Carolina that a murder victim's statements falling within the state of mind exception to the hearsay rule are highly relevant to show the status of the victim's relationship to the defendant."
 
 State v. Alston,
 

 341 N.C. 198
 
 , 230,
 
 461 S.E.2d 687
 
 , 704 (1995),
 
 cert. denied,
 
 [
 
 516 U.S. 1148
 
 ,
 
 116 S.Ct. 1021
 
 ],
 
 134 L.Ed.2d 100
 
 (1996) ;
 
 see
 

 State v. McHone,
 

 334 N.C. 627
 
 , 637,
 
 435 S.E.2d 296
 
 , 301-02 (1993) (state of mind relevant to show a stormy relationship between the victim and the defendant prior to the murder),
 
 cert. denied,
 
 [
 
 511 U.S. 1046
 
 ,
 
 114 S.Ct. 1577
 
 ],
 
 128 L.Ed.2d 220
 
 (1994) ;
 
 State v. Lynch,
 

 327 N.C. 210
 
 , 222,
 
 393 S.E.2d 811
 
 , 818-19 (1990) (the defendant's threats to the victim shortly before the murder admissible to show the victim's then-existing state of mind);
 
 State v. Cummings,
 

 326 N.C. 298
 
 , 313,
 
 389 S.E.2d 66
 
 , 74 (1990) (the victim's statements regarding the defendant's threats relevant to the issue of her relationship with the defendant).
 

 State v. Crawford,
 

 344 N.C. 65
 
 , 76,
 
 472 S.E.2d 920
 
 , 927 (1996).
 

 The victim's statement that she "was scared of" defendant unequivocally demonstrates her state of mind and is "highly relevant to show the status" of her relationship with defendant on the night before she was killed.
 
 See
 

 id.,
 

 472 S.E.2d at 927
 
 . Accordingly, we hold that this statement was admissible under the state-of-mind hearsay exception.
 
 See
 
 N.C. Gen.Stat. § 8C-1, Rule 803(3).
 

 But even assuming
 
 arguendo
 
 that this statement was inadmissible, we hold that defendant has failed to demonstrate that "there is a reasonable possibility that, had the [alleged] error in question not been committed, a different result would have been reached at the trial[.]"
 
 See
 
 N.C. Gen.Stat. § 15A-1443(a) (2013). As discussed above, the State proffered overwhelming evidence supporting defendant's conviction of first-degree murder under theories of both premeditation and deliberation and felony murder. Accordingly, we hold that defendant has failed to demonstrate that this alleged error prejudiced him.
 

 *281
 
 IV. Conclusion
 

 For the foregoing reasons, we hold defendant was not deprived of effective assistance of counsel and that the trial court committed no error.
 

 NO ERROR.
 

 Judges CALABRIA and INMAN concur.
 

 [1]
 

 We use a pseudonym to protect the identity of the juvenile.