IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-415

No. COA21-635

Filed 21 June 2022

Onslow County, No. 13 CRS 51604

STATE OF NORTH CAROLINA

v.

DEREK JACK CHOLON

Appeal by defendant from order entered 31 March 2021 by Judge Phyllis M. Gorham in Onslow County Superior Court. Heard in the Court of Appeals 10 May 2022.

*Attorney General Joshua H. Stein, by Assistant Attorney General Caden William Hayes, for the State.*

*Joseph P. Lattimore for defendant-appellant.*

ARROWOOD, Judge.

¶ 1   Derek Jack Cholon ("defendant") appeals from the trial court's order denying his motion for appropriate relief ("MAR") claiming ineffective assistance of counsel. Defendant contends the trial court erred in concluding that defendant's trial counsel did not concede defendant's guilt without his consent and that trial counsel did not override defendant's autonomy to decide the objective of the defense. For the following reasons, we reverse and remand.

I.     Background

On 8 April 2014, an Onslow County grand jury indicted defendant on charges of first-degree statutory sexual offense, crime against nature, and taking indecent liberties with a minor.  The indictment alleged that on 6 March 2013 defendant engaged in a sexual act with M.B.,[1] "a person of the age of 15 years."  Prior to trial, the State dropped the crime against nature charge and offered defendant a plea agreement with no active prison time.  Defendant maintained his innocence and rejected the plea agreement.

The matter came on for trial on 7 July 2015 in Onslow County Superior Court. At trial, the State presented evidence establishing that M.B. was 15 years old, and that defendant was 41 years old at the time of the alleged acts.  M.B. testified that he had met defendant through an online dating app,[2] and that, when they met in-person on 6 March 2013, defendant performed oral sex on M.B. Officer Taylor Wright ("Officer Wright") testified that on 6 March 2013, she had "responded to the scene" after receiving a call about "a suspicious vehicle[,]" and found defendant and M.B. According to Officer Wright, defendant initially told her that he and M.B. "were just sitting [in the car] talking[,]" but later told her that "he had performed oral sex on

---

[1] The juvenile's initials are used to protect his identity and for ease of reading.
[2] M.B. stated that the app required users to be at least 18 years old, and that he had indicated that he was 18 years old on his profile.

[M.B.], and that they were kissing." Officer Wright arrested defendant and took him to the police station, where he gave a written statement after being Mirandized. In the statement, defendant stated that M.B.'s profile "said 18[,]" and that, when M.B. entered defendant's car, defendant "asked him if he is really 19, and he corrected me and said he was 18." Defendant also stated that "[b]efore the police arrived, I gave [M.B.] oral and we kissed."

¶ 4        Defendant filed a motion to suppress defendant's verbal and written statements to police. In his affidavit in support of the motion, defendant swore that, on 6 March 2013, he and M.B. were sitting in his car talking when police arrived. Defendant also averred that he had no recollection of giving a written statement at the police station, indicating that he had hypoglycemia which he believed caused him to "blackout" at the police station. After conducting a *voir dire* of Officer Wright and hearing arguments from both sides, the trial court denied the motion to suppress. Defendant's written statement was admitted into evidence and published to the jury.

¶ 5        During closing statements, defendant's trial counsel stated as follows, in relevant part:

> [M.B.], apparently was, and I don't think otherwise, that on this occasion he was 15 years old. And he was in high school. Those . . . two facts . . . were concealed from [defendant] on this occasion we're talking about. [M.B.] didn't tell him that. He lied.
>
> . . . .

What does [defendant] say? The officer comes back there,
Officer Wright comes back there and begins to talk to him
and he tells this officer the truth; tells her what happened
between the two of them. "I gave him oral, and we were
kissing." But now we know that there's more than kissing
going on with [M.B.].

. . . .

[Defendant] did not say anything that was not truthful,
apparently except, "We were just talking." And when the
officers persisted with the asking about what happened, he
told them the truth. He didn't lie to them. He wrote it
down in a statement, which you read. So here he is. He's
looking -- subject to go to prison for such a long time.

. . . .

I submit to you, ladies and gentlemen, that [defendant] is
not entitled to sympathy. He's not entitled to any special
treatment more than any other citizen who comes into the
court charged with a crime.

When you leave this court building today to go back to your
homes and your families, you should feel when you leave
here, I've done what's right.

. . . .

We ask you to find him not guilty of these offenses. Thank
you.

¶ 6        On 9 July 2015, a jury convicted defendant of first-degree statutory sex offense

and taking indecent liberties with a minor. The trial court sentenced defendant to a

mitigated-range term of 144 to 233 months imprisonment on the statutory sex offense

conviction, and a concurrent 10 to 21 months term on the indecent liberties

conviction.

¶ 7    Shortly after the trial, defendant sent a letter to the trial court requesting a review of his trial and a mistrial "on the grounds that [his trial counsel] entered an admission of guilt on my behalf without my permission during his closing statement." Defendant also asserted that he advised his trial counsel of "health conditions which are in the law books as a valid medical condition to overturn a statement of confession and he would not research it."

¶ 8    On 2 March 2016, defendant filed an MAR with this Court alleging that his trial counsel had provided *per se* ineffective assistance of counsel under *State v. Harbison*, 315 N.C. 175, 337 S.E.2d 504 (1985) by admitting defendant's guilt, without defendant's consent, during closing arguments.

¶ 9    On 7 February 2017, this Court filed an opinion holding that defendant had not established a claim under *Harbison* because defendant's "counsel did not expressly concede [d]efendant's guilt" and "did not admit each element of each offense." *State v. Cholon*, 251 N.C. App. 821, 827, 796 S.E.2d 504, 507 (citation omitted), *review allowed, decision vacated*, 370 N.C. 207, 804 S.E.2d 187 (2017). This Court also held that "the record reveals such overwhelming evidence of [d]efendant's guilt that we cannot conclude that but for defense counsel's ineffective assistance, the result of the trial would have been different." *Id.* at 828, 796 S.E.2d at 508. This Court found no error in defendant's trial and denied the MAR. *Id.* at 829, 796 S.E.2d

at 509.

On 14 March 2017, defendant petitioned our Supreme Court for discretionary review on the grounds that his trial counsel conceded his guilt during closing argument by admitting to every contested element of both charges. On 28 September 2017, our Supreme Court allowed defendant's petition "for the limited purpose of vacating the decision of the Court of Appeals and remanding to that court with instructions for further remand to the trial court to hold an evidentiary hearing on defendant's motion for appropriate relief in light of . . . relevant authority." *State v. Cholon*, 370 N.C. 207, 804 S.E.2d 187 (2017). The Supreme Court directed the trial court to "enter findings of fact and conclusions of law and determine whether defendant is entitled to relief." *Id.*

On 6 May 2019, the trial court held a hearing on defendant's MAR. At the hearing, the trial court received an affidavit from defendant's trial counsel, but did not receive any other evidence or testimony. Defendant's trial counsel's affidavit averred as follows:

> 11. In my argument to the jury I did not expressly argue the elements of the offenses which [defendant] was charged in the bill of indictments. My argument was intended to draw a sharp contrast between the statements of [defendant] and those made by M.B. Nowhere in my argument did I concede the guilt of [defendant], but in fact, I argued that the jury should find him not guilty.

12. I did not get permission from [defendant] to make these statements and I did not request that the Court make an inquiry of [defendant] pursuant to *State v. Harbison*.

13. I was aware of *State v. Harbison*, however, I did not believe that I needed to get [defendant]'s permission to make the statements because I did not believe I was making a full admission to all the elements of the crime.

¶ 12 On 28 May 2019, the trial court entered an order denying defendant's MAR and request for new trial. The trial court concluded that defendant's trial counsel "did not concede each element of either offense, did not claim [d]efendant was guilty, and did not admit to any lesser included offenses." Additionally, the trial court concluded that though "defense counsel conceded that M.B. was 15 years old at the time, he never conceded [d]efendant's age nor did he concede that [d]efendant's action was willful. Furthermore, . . . defense counsel argued that there was reasonable doubt and that the jury should find [d]efendant not guilty."

¶ 13 On 24 January 2020, defendant filed a Petition for *Writ of Certiorari* ("PWC") with this Court. On 11 February 2020, this Court determined that the 28 May 2019 order "failed to comply with the North Carolina Supreme Court's order entered on 28 September 2017" and allowed the PWC "for the limited purpose of vacating the trial court's order and remanding for an evidentiary hearing."

¶ 14 The trial court conducted an evidentiary hearing on 30 September 2020. The

State acknowledged during its opening statement that the trial court was to address defendant's claim that his trial counsel violated his "ability to maintain autonomy over his defense[.]" The trial court heard testimony from defendant and his trial counsel, and received several documentary exhibits, including the trial counsel's affidavit and copies of text messages between defendant and his trial counsel. The trial court took the matter under advisement at the conclusion of the hearing.

¶ 15    On 31 March 2021, the trial court entered an order again denying defendant's MAR. The trial court found that defendant's trial counsel contended "that he asked the jury to find [d]efendant not guilty twice in his closing and that the references to truthfulness were in an attempt to discredit the State's witness, in concert with [d]efendant's preferred trial strategy." The trial court further found that defendant's trial counsel contended "that [d]efendant never told him that [d]efendant did not want to concede that the sexual acts took place."

¶ 16    In its conclusions of law, the trial court recognized *State v. McAllister*, 375 N.C. 455, 847 S.E.2d 711 (2020), which extended the *Harbison* test to include implied admissions of guilt. The trial court concluded that defendant's trial counsel "requested that the jury find [d]efendant not guilty for all charges. Given this difference from *McAllister*, and the Supreme Court's statements about its narrow holding, [d]efendant's case here does not constitute admission of guilt."

¶ 17    On 11 June 2021, defendant filed a PWC with this Court requesting review of

the trial court's 31 March 2021 order. On 22 July 2021, this Court allowed the PWC to review the order.

## II. Discussion

¶ 18 Defendant contends the court erred in ruling that his trial counsel's closing argument did not amount to a concession of guilt and did not violate defendant's right to autonomy over the objective of the defense.

### A. Standard of Review

¶ 19 Upon reviewing a trial court's ruling on an MAR, this Court reviews "to determine whether the findings of fact are supported by evidence, whether the findings of fact support the conclusions of law, and whether the conclusions of law support the order entered by the trial court." *State v. Matthews*, 358 N.C. 102, 105-106, 591 S.E.2d 535, 538 (2004) (citations and quotation marks omitted). A trial court's conclusions of law in an order denying an MAR are reviewed *de novo*. *State v. Martin*, 244 N.C. App. 727, 734, 781 S.E.2d 339, 344 (2016) (citation omitted).

### B. Admission of Guilt

¶ 20 Under the Sixth and Fourteenth Amendments to the United States Constitution, a "defendant's right to counsel includes the right to the effective assistance of counsel." *State v. Braswell*, 312 N.C. 553, 561, 324 S.E.2d 241, 247 (1985) (citing *McMann v. Richardson,* 397 U.S. 759, 771, 25 L. Ed. 2d 763, 773 (1970)). Generally, in order to establish ineffective assistance of counsel, "the defendant must

show that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693 (1984).

¶ 21     In some cases, however, there exist "circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." *State v. Harbison*, 315 N.C. 175, 179, 337 S.E.2d 504, 507 (1985) (citations and quotation marks omitted).

> When counsel admits his client's guilt without first obtaining the client's consent, the client's rights to a fair trial and to put the State to the burden of proof are completely swept away. The practical effect is the same as if counsel had entered a plea of guilty without the client's consent.

*Id.* at 180, 337 S.E.2d at 507. Accordingly, "ineffective assistance of counsel, per se in violation of the Sixth Amendment, has been established in every criminal case in which the defendant's counsel admits the defendant's guilt to the jury without the defendant's consent." *Id.*, 337 S.E.2d at 507-508.

¶ 22     In *McAllister*, our Supreme Court considered the application of *Harbison* to an implied concession of guilt. *McAllister*, 375 N.C. at 473, 847 S.E.2d at 722. The defendant in *McAllister* was charged with assault on a female, assault by strangulation, second-degree sexual offense, and second-degree rape. *Id.* at 458-59, 847 S.E.2d at 714. During closing arguments, the defendant's trial counsel

repeatedly asked the jury to find the defendant not guilty of three charged offenses but made no reference to the fourth offense. *Id.* at 460-61, 847 S.E.2d at 715. Specifically, the defendant's trial counsel stated:

> You heard him admit [to police] that things got physical. You heard him admit that he did wrong, God knows he did. They got in some sort of scuffle or a tussle or whatever they want to call it, she got hurt, he felt bad, and he expressed that to detectives. Now, they run with his one admission and say "well, then everything Ms. Leonard—everything else Ms. Leonard said must be true." Because he was being honest, they weren't honest with him.
>
> . . . .
>
> I asked you at the beginning [to] make the State prove their case, make them. Have they? Anything but conjecture and possibility? All I ask is that you put away any feelings you have about the violence that occurred, look at the evidence and think hard. Can you convict this man of rape and sexual offense, assault by strangulation based on what they showed you? You can't. Please find him not guilty.

*Id.*

¶ 23        The Court held "that a *Harbison* violation is not limited to such instances and that *Harbison* should instead be applied more broadly so as to also encompass situations in which defense counsel impliedly concedes his client's guilt without prior authorization." *Id.* at 473, 847 S.E.2d at 722. The Court noted that the attorney's statements were problematic for several reasons, including that the attorney "attested to the accuracy of the admissions made by [the] defendant in his videotaped statement by informing the jurors that [the] defendant was 'being honest[,]' " as well

as by reminding the jury "that [the] defendant had admitted he 'did wrong' during the altercation" and by asking the jury to find the defendant not guilty on three charges, but not the fourth. *Id.* at 474, 847 S.E.2d at 722-23.

¶ 24        "The Court of Appeals majority [in *McAllister I*] applied an overly strict interpretation of *Harbison* here by confining its analysis to (1) whether defense counsel had expressly conceded [the] defendant's guilt of the assault on a female charge; or (2) whether counsel's statements 'checked the box' as to each element of the offense." *Id.* at 475, 847 S.E.2d at 723. Instead, "our inquiry must focus on whether defense counsel admitted [the] defendant's guilt to a charged offense without first obtaining his consent." *Id.* at 476, 847 S.E.2d at 724.

¶ 25        In this case, defendant maintained his innocence throughout trial and rejected a plea agreement prior to trial. Defendant also sought to suppress statements made to the police due to a stated medical condition. It appears that defendant did not, at any time, authorize his trial counsel to admit defendant's guilt or enter a guilty plea; the trial counsel acknowledged the lack of permission in his affidavit. However, during closing arguments, defendant's trial counsel acknowledged that M.B. was 15 years old and that he lied to defendant about his age, apparently in an effort to rebut M.B.'s testimony. The trial counsel further stated that defendant told Officer Wright "the truth" about "what happened between the two of them[;] 'I gave him oral, and we were kissing.' " Prior to this statement, the State presented evidence establishing

that M.B. was 15 years old, that defendant was 41 years old, and that they were not lawfully married to each other.

¶ 26       Defendant's trial counsel's statement effectively admitted and established that defendant had, in fact, engaged in a sexual act with M.B., the remaining element to be established for both charges. Significantly, the statement was in reference to an apparent admission by defendant to a law enforcement officer, which defendant denied making. This statement is substantially similar to the statements in *McAllister*, as the trial counsel argued to the jury that defendant was being honest when he spoke with Officer Wright. Although the trial court did acknowledge *McAllister*, we disagree with the conclusion that defendant's trial counsel's request that the jury find defendant not guilty was sufficient to distinguish this case from *McAllister*. Simply asking the jury to find defendant not guilty did not serve to negate the trial counsel's prior statements. More importantly, the trial counsel's statements in this case that he told "this officer the truth" is indistinguishable from the attorney's attestations in *McAllister*.

¶ 27       While recognizing the *McAllister* Court's admonition "that a finding of *Harbison* error based on an implied concession of guilt should be a rare occurrence[,]" *McAllister*, 375 N.C. at 376, 847 S.E.2d at 724, we believe this case presents such a rare occurrence. Although defendant specifically maintained his innocence and filed an affidavit denying that he made incriminating statements to police, his trial

counsel stated the opposite during his closing argument.

"[W]hen counsel to the surprise of his client admits his client's guilt, the harm is so likely and so apparent that the issue of prejudice need not be addressed." *Harbison*, 315 N.C. at 180, 337 S.E.2d at 507. Based on the circumstances, we hold that defendant's trial counsel impliedly admitted to defendant's guilt, constituting a per se *Harbison* violation. *McAllister*, 375 N.C. at 475, 847 S.E.2d at 723 ("In cases where . . . defense counsel's statements to the jury cannot logically be interpreted as anything other than an implied concession of guilt to a charged offense, *Harbison* error exists unless the defendant has previously consented to such a trial strategy."). However, since the trial court did not make specific findings regarding whether defendant consented to his trial counsel's statements, the appropriate remedy is to remand to the trial court for an evidentiary hearing. *See McAllister*, 375 N.C. at 477, 847 S.E.2d at 725.

### III.    Conclusion

For the foregoing reasons, we reverse the trial court's order and remand for an evidentiary hearing to be held as soon as practicable for the sole purpose of determining whether defendant knowingly consented in advance to his trial counsel's admission of guilt to both charged offenses.

REVERSED AND REMANDED.

Judges INMAN and WOOD concur.