An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-550

Filed 6 August 2025

Durham County, Nos. 21CRS053976, 21CRS054031

STATE OF NORTH CAROLINA

v.

DONNIE RAY NUNNALLY

Appeal by defendant from judgments entered 20 January 2023 by Judge William D. Wolfe in Durham County Superior Court. Heard in the Court of Appeals 23 April 2025.

> *Attorney General Jeff Jackson, by Assistant Attorney General Ashley B. Weathers, for the State.*

> *Joseph P. Lattimore for defendant.*

FREEMAN, Judge.

Defendant appeals from judgments entered upon jury verdicts finding him guilty of two counts of misdemeanor assault with a deadly weapon and one count of felony possession of a firearm by a convicted felon. On appeal, defendant contends he received per se ineffective assistance of counsel because the record does not

establish whether he knowingly consented to his counsel's implicit admission of guilt to the possession of a firearm by a convicted felon charge. After careful review, we conclude that because the record does not establish whether defendant knowingly consented to such admission, we are unable to determine whether defendant received per se ineffective assistance of counsel. We therefore remand this case to Durham County Superior Court for an evidentiary hearing for the sole purpose of determining whether defendant knowingly consented in advance to this admission of guilt.

## I.    Factual and Procedural Background

The evidence presented at trial tended to show that on 8 August 2021, defendant's former girlfriend, Geneicia Connor, was helping her uncle, Paul Connor, and his wife move to a new home. Ms. Connor was following Mr. Connor's car in her own vehicle when a black van, driven by defendant, pulled in front of her car at an intersection. Both defendant and Ms. Connor exited their vehicles and Ms. Connor realized defendant was holding a gun. After the two exchanged a few words, defendant, who seemed "irritated, frustrated," and "[j]ust mad," hit Ms. Connor in the jaw with the gun and she fell backwards onto the ground.

Upon seeing defendant strike Ms. Connor, Mr. Connor uncle exited his car, saw defendant point the gun in Ms. Connor's direction, and "heard two or three shots" ring out. Defendant then turned towards Mr. Connor and "shot at least three, four rounds," but Mr. Connor did not think defendant was trying to hit him with these

rounds. After firing these rounds, defendant returned to the van and drove away. No one was injured by any of the rounds defendant fired that day.

Durham police officer Dazhon Goodson responded to the scene and recovered two rifle shell casings. Defendant was arrested on 12 August 2021, and on 7 September 2021, a grand jury indicted defendant on two counts of assault with a deadly weapon with intent to kill and one count of possession of a firearm by a felon. A superseding indictment for the possession of a firearm by a felon charge was issued on 6 September 2022.

On 17 January 2023, defendant's matter came on for trial. During the pretrial proceedings, defendant stipulated to pleading guilty to a felony committed on 19 December 2003.

> THE COURT: . . . [Counsel], I assume you're stipulating for the purpose of avoiding the jury hearing what the felony is, is that right?
>
> [COUNSEL]: That is correct, Your Honor.
>
> . . .
>
> THE COURT: . . . Mr. Nunnally, did you understand what your lawyer just said? That basically by virtue of this stipulation, basically it's just something . . . on which your lawyer and the State's lawyer agree. They're basically agreeing that you were convicted of a felony on . . . [27 September 2004] in Guilford County. That basically does admit an element of the offense. Your lawyer can't do that without your permission. Does he have your permission to do that?
>
> DEFENDANT: Is it in my best interest?

> [COUNSEL]: Yeah. Otherwise they're going to read what the felony was.
>
> DEFENDANT: Yes, I agree.

After trial began the next day, defendant's counsel informed the trial court during a bench conference that it "needed to possibly make a Harbison inquiry because there may be a point in the trial where the defense may admit the [d]efendant actually possessed the firearm." The trial court proceeded to engage in another colloquy with the defendant:

> THE COURT: Mr. Nunnally, can you stand for me? Just got to ask you a quick question. It's kind of [the] same question I asked you before about the other stipulation.
>
> Your lawyer has told me that there may be a point in this trial, either during one of his arguments or maybe if you testify—don't know whether that's going to happen yet or not—where he may concede on your behalf that you actually possessed a firearm during this incident. Because that's an element of one of the crimes, I have to ask you whether or not he has your permission to do that, because he's not allowed to concede any element of the crimes without your permission.
>
> There may be tactical reasons why that's a good idea or not. I don't know, that's between you and your lawyer. But I just need to know whether or not he has your permission, if he does that.
>
> DEFENDANT: He has my permission. Can I ask you a question?
>
> THE COURT: Sure. Be careful not to tell me anything about the confidential conversations between you and your lawyer, but yes, you may ask me a question.
>
> DEFENDANT: I wanted to be, you know, open and honest,

4

you know, during the whole court—

THE COURT: Yes, sir.

DEFENDANT: —situation. And I'm not going to hold anything back. So, you know, the court could proceed efficiently and not waste anybody's time. And that's why—

[COUNSEL]: We're not at that point yet, so—we'll get to that.

He's asking about—the decision on whether to testify or not.

THE COURT: Oh, I see.

[COUNSEL]: And that will happen once the State—

THE COURT: Oh, yes, we'll have a conversation about that later, Mr. Nunnally. You don't have to decide that right now, but I will ask you some questions about that, too, later.

Right now I'm just trying to find out whether or not— because the point in time that that admission may come out might happen before we get to the point of testifying. I don't know. And I just need to make sure he's got your permission to do that because that's required. And so if he does, fine, just tell me so; if not, then I need to know that too.

DEFENDANT: You know, I didn't want to like waste, you know, court—and I wanted to kind of like explain to you, because I never had a chance—

[COUNSEL]: That's not—this is the trial. We're not—

THE COURT: Just trying to find out if your lawyer has permission from you to admit during this incident you may have possessed a firearm. That's all.

DEFENDANT: At a later date, you know, during the trial, will I get a chance to talk to you?

THE COURT: You'll have, yes, an opportunity to testify. We will discuss that decision later.

DEFENDANT: Thank you.

THE COURT: So does he have your permission?

DEFENDANT: Yes, sir.

THE COURT: Thank you. That's all I need to know.

Ultimately, defendant did not elect to testify and did not present any evidence at trial. During closing arguments, defendant's counsel stated in part:

> The circumstances that you can draw the deduction from is what Mr. Connor said. He was standing mere feet, standing over Geneicia Connor when he pulled the trigger. If he had intended to kill her, Paul Connor's words, a reasonable and prudent person, he'd have done it. He must have been shooting around her.
>
> From every other witness that absolutely would have looked like he was shooting at her. But Paul Connor says he wasn't. Then turned as Mr. Connor is coming. Same thing. Mr. Connor said he was close enough. I mean, closer than we are. And missed with multiple shots. That's a circumstance where you can say just a horrible shot. Or you can say never intended to kill.
>
> The State says, why would you ever shoot a gun at somebody without an intent to kill? Warning shots scare people off. There's lots of reasons, whether they are rational reasons or reasons you would do, that's a different issue. But certainly just the fact that you point a gun in the direction of somebody and pull the trigger does not prove beyond a reasonable doubt that you had an intent to kill that person, especially when all the other circumstances are you didn't even strike them. And you were close enough that if that was your intent, you would not have missed.
>
> You know, the State wants to quote the stuff from the

Court of Appeals, natural consequences. Pointing a gun at somebody and shooting, if you intend to kill them a natural consequence is you hit them. Pointing a gun at somebody and shooting and not hitting them is a natural consequence of not having an intent to kill that person. Just because someone points a gun in the direction of somebody does not mean there was an intent to kill.

At the conclusion of trial, the jury found defendant guilty of two counts of the lesser-included offense of assault with a deadly weapon and one count of possession of a firearm by a felon. After the jury found the existence of an aggravating sentencing factor, the trial court sentenced defendant to 24–38 months imprisonment for the possession of a firearm by a felon conviction and 150 days imprisonment for the assault with a deadly weapon convictions, set to run consecutively. Defendant timely appealed.

## II. Jurisdiction

This Court has jurisdiction to review "any final judgment of a superior court, other than one based on a plea of guilty or nolo contendere[.]" N.C.G.S. § 7A-27(b)(1) (2023). As defendant's judgments from Durham County Superior Court are not based on pleas of guilty or nolo contendere, we have jurisdiction to review defendant's appeal.

## III. Standard of Review

"We review per se ineffective assistance of counsel claims de novo." *State v. Moore*, 286 N.C. App. 341, 345 (2022).

## IV. Discussion

Defendant argues he received per se ineffective assistance of counsel because the record does not demonstrate he consented to his attorney's concession of guilt to the possession of a firearm by a felon charge. Specifically, defendant contends that even though the record reveals his consent to the separate concession of both elements of the charge, it does not show his appreciation and understanding that such concessions equated to an admission of guilt. As we agree that the record is insufficient to determine whether such admission was made with or without defendant's knowing consent, we cannot determine whether defendant received ineffective assistance per se and are compelled to remand this case for an evidentiary hearing.

> A defendant claiming ineffective assistance of counsel must ordinarily show both that counsel's performance was deficient, and that counsel's deficient performance prejudiced the defense. However, "ineffective assistance of counsel, per se in violation of the Sixth Amendment, has been established in every criminal case in which the defendant's counsel admits the defendant's guilt to the jury without the defendant's consent."

*Moore*, 286 N.C. App. at 345 (quoting *State v. Harbison*, 315 N.C. 175, 180 (1985)).

In North Carolina, this per se rule applies even "where the evidence is so overwhelming that a plea of guilty is the best trial strategy" because "the gravity of the consequences demands that the decision to plead guilty remain in the defendant's hands." *Harbison*, 315 N.C. at 180. "The practical effect" of counsel admitting a defendant's guilt without obtaining consent "is the same as if counsel had entered a

8

plea of guilty without the client's consent." *Id*.

The *Harbison* per se rule also applies "when defense counsel impliedly—rather than expressly—admits the defendant's guilt to a charged offense." *State v. McAllister*, 375 N.C. 455, 456 (2020).

> Although an overt admission of the defendant's guilt by counsel is the clearest type of *Harbison* error, it is not the exclusive manner in which a per se violation of the defendant's right to effective assistance of counsel can occur. In cases where—as here—defense counsel's statements to the jury cannot logically be interpreted as anything other than an implied concession of guilt to a charged offense, *Harbison* error exists unless the defendant has previously consented to such a trial strategy. In such cases, the defendant is prejudiced in the same manner and to the same degree as if the admission of guilt had been overtly made.

*Id*. at 475.

It is not the strategic admission, explicit or otherwise, of guilt that creates a *Harbison* error. Rather, because "[i]t is the defendant—not his attorney—whose liberty is placed at risk as a result of such a strategic decision," *id*. at 476, the existence of such error turns on whether the admission was made with or without the defendant's knowing consent. While an on-the-record discussion between the defendant and the trial court is not the "sole measurement of consent," our Supreme Court has stated that it "is the preferred method of determining whether the defendant knowingly and voluntarily consented to admission of guilt during closing argument[.]" *Id*. at 477 (cleaned up).

9

Here, the charged offense of possession of a firearm by a felon contains two elements: "(1) defendant was previously convicted of a felony; and (2) thereafter possessed a firearm." *State v. McCoy*, 234 N.C. App. 268, 272 (2014). The record reveals two exchanges between the trial court and defendant regarding this charge. The first exchange, wherein defendant consented to stipulation of his prior felony conviction, addressed the first element of the crime. The second exchange, wherein defendant consented to his counsel's concession that he possessed a firearm after such felony conviction, addressed the second element of the crime.

However, there is no exchange in the record demonstrating that defendant understood the consequence of conceding the second element of this offense. Because the concession of the second element amounted to an admission of guilt, this concession can only pass muster under *Harbison* and *McAllister* if defendant knowingly consented to an admission of guilt to this offense. The record before us is insufficient to determine whether defendant did so, and we therefore cannot resolve whether defendant received ineffective assistance of counsel per se on this direct appeal.

As this Court does not engage in fact-finding, we remand this case to the Durham County Superior Court for an evidentiary hearing to be held as soon as practicable. *See McAllister*, 375 N.C. at 477; *see also State v. Thomas*, 327 N.C. 630 (1990). The sole purpose of this evidentiary hearing will be to determine whether defendant understood the consequence of the concession of the second element such

10

that he knowingly consented in advance to his trial counsel's admission of *guilt* to the possession of a firearm by a felon charge. Following the hearing, the trial court shall make findings of fact and conclusions of law and enter an order. The trial court shall then certify that order, the findings of fact and conclusions of law therein, and the transcript of the hearing to this Court. *See McAllister*, 375 N.C. at 477.

## V.  Conclusion

Though the record in this case demonstrates defendant's knowing consent to the concession of both elements of the possession of a firearm by a felon charge, it does not demonstrate defendant's understanding of the consequence of such concessions. Because the record fails to show whether defendant knowingly consented in advance to his trial counsel's admission of guilt, we remand this matter for an evidentiary hearing addressing this question.

REMANDED.

Judge COLLINS concurs.

Judge MURRY dissents by separate opinion.

Report per Rule 30(e).

No. COA24-550 – *State v. Nunnally*

MURRY, Judge, dissenting.

Defendant argues that the trial court erred by failing to ensure he knowingly consented to his defense counsel's (Counsel) admission to firearms possession and a prior felony conviction. He suggests that this alleged failure violated *per se* his constitutional right to effective assistance of counsel. For the reasons below, I would hold that Defendant received effective assistance of counsel, and that the trial court conducted a proper colloquy to validate Defendant's knowing consent to these admissions. Because I would affirm the trial court's judgment. I respectfully dissent.

The respective Counsel Clauses of our Federal and State Constitutions each guarantee a criminal defendant the right to counsel at trial. *See* U.S. Const. amend. VI, cl. 6; N.C. Const. art. I, § 23, cl. 3. The Federal Supreme Court evaluates the right to *effective* assistance of this counsel under the two-part *Strickland* test, that is, (1) whether the "counsel's performance was deficient" and (2) whether that "deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Our Supreme Court interprets both Counsel Clauses within this same general framework, *see State v. Braswell*, 312 N.C. 553, 562 (1985) (adopting *Strickland* test), but does not require a "show[ing of] any specific prejudice" under the second *Strickland* prong "when counsel to the surprise of his client admits his client's guilt," *State v. Harbison*, 315 N.C. 175, 179 (1985).

Under this "*Harbison* violation," the trial court need not follow any "particular procedure . . . when confronted with a defendant's concession" but must engage with him in a manner that "establish[es] . . . consent[ ] to the admissions made later by counsel during trial." *State v. Berry*, 356 N.C. 490, 514 (2002); *cf.* N.C.G.S. § 15A-1022(a)(1)–(7) (forbidding trial courts from "accept[ing] a plea of guilty . . . from the defendant without first addressing him personally and [i]nforming him" of his multiple rights). "[T]he facts must show, at a minimum, that [the] defendant *knew* his counsel w[ould] . . . make such a concession." *State v. Matthews*, 358 N.C. 102, 109 (2004). More specifically, the trial court must ensure that "the defendant . . . give[s] knowing and informed consent" "to any admissions of guilt at trial" and demonstrate "aware[ness] of the potential consequences of his decision." *State v. Maready*, 205 N.C. App. 1, 7 (2010) (first citing *Harbison*, 315 N.C. at 180; and then citing *Matthews*, 358 N.C. at 108–09). Despite these strictures, though, a defense counsel does *not* violate *Harbison* if he "concede[s] an element of a crime charged[ ] while still maintaining" his client's innocence. *State v. Foreman*, 270 N.C. App. 784, 789 (2020) (citing *State v. Wilson*, 236 N.C. App. 472, 477 (2014)). All told, we should draw upon *Harbison* only for those errors "so egregious that harm to the defendant is near certain" and we would otherwise "waste . . . judicial resources to determine whether . . . [he] was actually prejudiced." *State v. McAllister*, 375 N.C. 455, 482 (2020) (Newby, J., dissenting).

I would decline to overextend *State v. McAllister*, where our Supreme Court held that a "*Harbison* violation . . . also encompass[es] situations in which defense counsel impliedly concedes his client's guilt without prior authorization." 375 N.C. at 473 (majority op.). Counsel did not do so here. The record establishes that the Defendant expressly authorized both the admission of possession of a firearm and the prior felony conviction after proper inquiry by the trial court. Counsel's entirely proper conduct instead mirrors that of the counsel in *State v. Moore*, 286 N.C. App. 341 (2022). In *Moore*, this Court rejected the defendant's argument that his counsel violated *Harbison* by impermissibly implying "guilt[ ] of lesser-included offenses" during trial. *Id.* at 345. There, the State prosecuted a defendant for first-degree murder under N.C.G.S. § 14-17(a), which requires a "willful, deliberate, and premeditated" intent to kill. *Id.* at 343–44. Prior to trial, the trial court "conducted a colloquy wherein [the d]efendant indicated . . . h[is] consent[ ]" to his counsel's opening and closing arguments that he lacked any "premeditation and deliberation." *Id.* at 343–44. The counsel also acknowledged in his opening statement that his client "fired a shot that entered [the victim]'s midsection." *Id.* at 344. The jury still convicted the defendant of the original charge, which differs from second-degree murder under § 14-17(b) only by the required intent, *id.* at 344—much like the "[i]ntent to kill" that jury found lacking in Defendant's "[a]ssault with a [d]eadly [w]eapon" here. Here, Counsel deployed a strategy to avoid having Defendant's felony conviction presented to the jury by admitting its existence, and risking Defendant's credibility by avoiding

- 3 -

a specious argument that Defendant did not possess a gun during the incident. As a result, the record establishes Defendant's "consent[ ] to [C]ounsel's implied concession of . . . guilt to" the lesser charge of misdemeanor assault with a deadly weapon. *Id.* at 346; *see* N.C.G.S. § 14-33(c)(1). Counsel timely informed the trial court on two separate occasions of his plans to "concede on [Defendant's] behalf that [Defendant] actually possessed a firearm during" the altercation. The trial court then twice asked Defendant whether Counsel had his "permission to do that[ ]" because Counsel "could not concede any element of the crimes without . . . permission." The trial court even acknowledged to Defendant the "tactic[al]" legitimacy of Counsel's decision while recognizing that the ultimate resolution stayed "between [him] and [his] lawyer." Defendant didn't just confirm that Counsel "ha[d] [his] permission"; he inquired as to his own "best interest[s]" and promised to "not . . . hold anything back" so that the trial "court could proceed efficiently." And the transcript does not indicate that Counsel went beyond the bounds of this allowable concession in any of his oral arguments. In fact, Counsel permissively "maintain[ed] Defendant's innocence" of the more severe crime in the hopes of securing conviction on a lesser-included charge—and did so successfully.[1] *Wilson*, 236 N.C. App. at 477.

---

[1] Defendant was convicted of two counts of assault with a deadly weapon (class A1 misdemeanor), a lesser-included offense for which he was indicted, assault with a deadly weapon with intent to kill (Class E felony).

*MURRY, J., dissenting*

Because I would not continue down "a slippery slope with no obvious stopping point," I would hold that the trial court did not err by permitting Counsel to concede Defendant's guilt and that Defendant was not prejudiced by this admission. *McAllister*, 375 N.C. at 478 (Newby, J., dissenting). Thus, I respectfully dissent.